(No. 20682.—

HENRY FELKER *et al.* Appellants, *vs.* EDWIN ROTH *et al.* Appellees.

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

BEN L. SMITH, for appellants.

J. M. POWERS, for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill in the circuit court of Tazewell county seeking to set aside an order of the county superintendent of schools of Tazewell county establishing school district No. 118 in that county and for a decree holding that the territory of school district No. 118 is not, under the law, proper territory out of which to establish a school district. The bill also sought an injunction restraining the directors of school district No. 118 from issuing bonds for the purpose of purchasing a school site, contracting for a school house or levying taxes of any kind upon the territory within the boundaries of the district. The school directors of school district No. 118 and the county clerk of Tazewell county were made parties defendant. The defendants answered, and the cause was referred to a master in chancery to take proofs. A large amount of testimony was offered, covering over fifteen hundred pages of the transcript, much of which related to facts that might readily have been stipulated. The master reported, recommending dismissal of the bill for want of equity. Exceptions to that report were overruled by the chancellor and the

bill was dismissed for want of equity. Appellants, Henry Felker, Floyd Powell and Joseph Stucky, who were school directors of school district No. 79, of which district No. 118 was formerly a part, appealed as such school directors.

Much of the bill is admitted by the answer. The bill alleges and shows that on March 25, 1925, twenty-five legal voters living in the southern portion of school district No. 79 of township 25, in Tazewell county, known as Groveland township, filed with the trustees of schools for that township a petition for the creation of a new school district to be formed from the southern portion of district No. 79 in that township. At the regular April, 1925, meeting of the trustees the prayer of the petition was granted. On the same day an appeal was taken to the county superintendent of schools and a transcript of the proceedings filed in his office on April 7, 1925. On March 22, 1926, the county superintendent of schools held a public hearing on the appeal, and on April 19, 1926, issued an order confirming the action of the trustees, designating the new school district as district No. 118. In May, 1926, a board of directors was elected, and on June 12, following, an election was held in the new district to vote on the proposition of locating and purchasing a school site, building a school house and issuing bonds in the sum of $3500. All of the proposals were carried at this election. The bill in this case was filed on July 23, 1926, but it appears from the proof that on August 2, 1926, the directors of the new district began the erection of a school house, issued and sold bonds and paid for the building, employed a teacher, made a tax levy, and on September 13 of that year began the conduct of a school in district No. 118, which has continued during the regular school years since.

The bill charges that the action of the board of trustees and the county superintendent of schools was an oppressive, unreasonable exercise of discretion vested in the board and county superintendent and alleges the facts upon

which it bases these claims. It is also alleged in the bill that the sections of the statute permitting the formation of new districts, as was done in this case, delegate legislative authority and so are unconstitutional. The bill also charges that as an inducement to the trustees and superintendent of schools to grant the prayer of the petition the petitioners offered to, and did, file with the county superintendent of schools a bond pretending to agree to return to district No. 79 any amount to be received by the new district, if it be created, as its share under sections 64 and 65 of the School act; that such bond was filed with the county superintendent of schools prior to the decision creating the new district, and that said offer, and the bond and consideration thereof, are contrary to public policy and constituted a device to secure a favorable decision on the petition.

The errors assigned are, that sections 45, 55 and 56 of chapter 122 of the Revised Statutes are unconstitutional and void for the reason that the trustees in school districts are vested with legislative functions without provision for hearing by a competent judicial body on review, and that section 56 endows the county superintendent of schools with unreasonable discretion, giving him power to nullify the right of petition by withholding the decision as long as he may see fit and to grant all or part of the changes petitioned for, or to reverse entirely the actions of the trustees of schools if he sees fit. The remaining assignments of error center about the contention that the chancellor erred in refusing to quash and set aside the order of the county superintendent of schools and the order of the trustees of schools of Groveland township establishing a school.

Concerning the first contention, it is sufficient to say that it was raised in *Fisher* v. *Birkey*, 299 Ill. 145, where these sections of the statute were attacked for the reasons here urged and such attack was not sustained. It was observed in the opinion in that case, as it was in *Fisher* v. *Birkey*, 307 Ill. 625, pertaining to the same subject matter, that

if the sections of the act are unconstitutional the complainants would have a plain and adequate remedy at law and therefore could not maintain a bill in equity. What was said in those cases disposes of that ground of claim to equitable relief here.

The principal question here to be considered is whether it was an abuse of discretion on the part of school trustees of Groveland township and the county superintendent of schools to create school district No. 118 out of the territory of district No. 79. Such was a question of fact. Most of the facts were proved without dispute. It appears from the evidence that for seventy years the boundaries of district No. 79 had remained as they were at the time of the petition for the creation of a new district filed in this case, and that for fifty years prior to 1916 the school house in the district was near the geographical center thereof. After the completion of an electric railway system through the north center part of district No. 79, two urban communities, known as Groveland and Gardena, were platted, lots were sold and homes erected in the platted area. The population in that section of the school district increased rapidly and a demand arose for closer and more convenient school facilities for those living in that portion of the district, resulting in two propositions being submitted to the voters of the district: one to erect a school at Gardena, leaving the old school building stand for the benefit of the inhabitants of the south end of the district, and the second proposition being to move the old school building from its then location to a lot in Gardena and add another room to it. It appears that these propositions gave rise to a controversy. The families in the south end of the district objected to the removal of the building though not to the building of an additional school house. At the election, however, the voters of the north end of the district being more numerous than those of the south, the school house was ordered moved, and in 1916 it was moved over three-

quarters of a mile north and one-quarter of a mile east of its then location to its present location in Gardena. District No. 79 was approximately four miles long north and south and from a mile to a mile and three quarters in width. The Peoria-Morton road extends east and west through the district on a line two and one-quarter miles from the north side of the district and about one and three-quarters miles from the south side. Prior to the removal of the school house by a vote of the people it stood on this road. District No. 118 has been created out of that portion of district No. 79 lying south of the Peoria-Morton road. After the location of the school house on its present lot in Gardena the district contained about one thousand acres north of the school house and twenty-four hundred acres south of it, and some pupils from the south end of the district were required to go over three miles to attend school. The evidence shows that district No. 79 south of the Peoria-Morton road contained fourteen families and thirty-three legal voters, with fifteen children of school age. As the territory of district No. 79 is divided by establishing district No. 118, district No. 79 now has approximately eighteen hundred acres of land and district No. 118 has approximately sixteen hundred acres of land, and both districts are compact and contiguous. After the removal of the school building by vote in 1916 considerable agitation was raised by the families in the south part of the district to have a building built in that portion of the district, and in February, 1923, an election was had on the proposition of building a building for the benefit of the southern portion of district 79, but the greater number of voters in the north portion of the district voting against such an additional school building defeated the same. Thereafter, in March, 1923, a petition was filed with the board of trustees for the creation of a new school district. The prayer of the petition was granted but was later dismissed on appeal to the county superintendent by reason of a jurisdictional de-

fect in the proceeding. Subsequently the petition under consideration here was filed.

The evidence discloses that the school house built in district No. 118 is approximately the geographical center of the district as well as the center of the population. At the time of the creation of district No. 118 the remainder of district No. 79 contained ninety-six residences, three railroad rights of way, and other property of the fair cash value of $692,251. At the time of the creation of district No. 118 there were contained in it fourteen residences, one railroad right of way, and other property of a total fair cash value of $474,079. A consideration of the evidence in the record discloses that the creation of district No. 118 has not worked an undue financial hardship on the balance of district No. 79, though it was required to turn over, as the proportionate part of the school fund, to district No. 118 when organized, the sum of approximately $4500. The evidence shows that the rate of school taxes in district No. 79 as now constituted is a rate of $2.53 per $100 assessed valuation and that other districts of the county of Tazewell have a greater tax rate, and that the financial condition of district No. 79 is such that it will be out of debt within a few years. There is also evidence offered on the part of defendants to show that the assessed value of the property in Gardena and Groveland is disproportionately low as compared with the assessed valuations of the property in district No. 118 as constituted. It is unnecessary to go into an examination of this testimony, for we are of the opinion that it is not shown that an unreasonable hardship was imposed upon district No. 79 by the creation of district No. 118. It seems quite apparent from the testimony in this record that it was unreasonable to expect the people of the southern end of the district to travel the distances required to attend school at Gardena, and that other relief was sought before the petition was filed but was defeated by the more populous northern part

of the district. It was not a gross or wanton abuse of authority on the part of the trustees to create district No. 118.

The School act gives to the board of trustees and the county superintendent of schools large discretion, but their action must not be arbitrary or exceed the bounds of reason, and if it does, though there be no willful or intentional wrong or abuse of power, the courts will give the relief by setting it aside. *Fisher* v. *Birkey,* 307 Ill. 625; *Trustees of Schools* v. *School Directors,* 190 id. 390.

It is earnestly argued by counsel for appellants that it was contrary to public policy for the petitioners before the board of trustees, and before the county superintendent of schools on appeal, to offer to give, and to file, a bond to re-pay to district No. 79 the amount of money which was given to district No. 118 as its share of the holdings of the original district. It is contended that this bond was not given in good faith but for the purpose of influencing the decision of the trustees and of the county superintendent of schools. Appellees, on the other hand, argue that the offer of the bond was in good faith, because the petitioners did not want any of the money belonging to the original district No. 79 and were therefore willing to pledge themselves personally to donate to that district the amount of that money, and such a bond was filed. There is no evidence that the giving of this bond for re-payment of the money to the old district resulted in any improper influence upon the trustees or the county superintendent of schools. If the petitioners desired to donate to district No. 79 an amount of money equal to that received by district No. 118 from district No. 79 there is nothing in the law that prohibits their making such a donation. There is no evidence of an improper motive or influence. Paragraphs 39 and 347 of the School act authorize trustees of schools to receive any gift, grant, donation or devise made for the use of any public school. This donation having been guaranteed for the benefit of district No. 79 and bearing no evidence

of bad faith, the appellants, as directors of school district No. 79, cannot complain.

Appellants admit that appellee district was formed in strict compliance with the statute except the giving of the bond, which they claim was against public policy, and with the further exception that it was an abuse of discretion on the part of the trustees and county superintendent of schools to create district No. 118 and worked an unreasonable hardship on the balance of the district. From a reading of the record, a more extended discussion of which is not necessary or desirable here, we are of the opinion that there was no abuse of discretion by the trustees· or the county superintendent of schools and that the chancellor did not err in dismissing the bill for want of equity. A court of equity will only interfere to control or review the acts of public officials invested with discretionary power, when fraud, corruption, oppression or gross injustice is plainly shown. (*Trustees of Schools* v. *School Directors, supra.*) Each case depends upon the facts in it. Appellants rely chiefly on *Fisher* v. *Birkey,* 307 Ill. 625, as authority to support their contention that the facts in this case show an abuse of discretion. The facts there are in nowise similar to the facts of this case, and while the relief was properly granted in that case such relief does not find basis in fact in this case.

Appellants complain of delay in the hearing of this cause, while appellees say the delays were agreed to by all parties. There was inexcusable delay for which appellants were not responsible, but as their bill presents no equitable grounds for relief no benefit to them would arise by a reversal of this decree, if such were justified because of such delay.

We are of the opinion that the chancellor did not err in dismissing the bill, and the decree will be affirmed.

*Decree affirmed.*