SCHOOL DISTRICT No. 49, IN LINCOLN COUNTY, NEBRASKA, ET AL., APPELLANTS, V. SCHOOL DISTRICT No. 65-R, IN AND FOR LINCOLN COUNTY, NEBRASKA, ET AL., APPELLEES.

66 N. W. 2d 561

Filed November 5, 1954. No. 33583.

*Edward E. Carr* and *Hollman & McCarthy,* for appellants.

*Beatty, Clarke, Murphy & Morgan, J. G. McIntosh,* and *Baskins & Baskins,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lincoln County. The action was instituted in the district court

on August 20, 1953, by School District No. 49 located in Lincoln County and by individual taxpayers residing therein. It primarily involves an attack upon the legality of school district No. 65-R of Lincoln County and seeks to prevent the defendants from putting it into operation insofar as it affects school district No. 49. The defendants are School District No. 65-R and the members of its board, School District No. 65, the Lincoln County Reorganization Committee and the individual members thereof, and the following county officials of Lincoln County: Treasurer, clerk, assessor, and superintendent. The district court found generally for the defendants and entered an order dismissing the action. Plaintiffs filed a motion for new trial and have appealed from the overruling thereof.

School district No. 65-R was created under and pursuant to the provisions of the Reorganization of School Districts Act, being sections 79-426.01 to 79-426.19, R. R. S. 1943, and amendments thereof. It will herein be referred to as the Act, school district No. 65-R will herein be referred to as district 65-R, and school district No. 49, which is an elementary grade rural school district, will be herein referred to as district 49.

The attack upon the legality of district 65-R is based on numerous grounds which can best be channeled into three principal categories: First, the unconstitutionality of the Act; second, irregularities in the proceedings of the Lincoln County reorganization committee in forming the district; and third, defects occurring in connection with the election adopting the reorganization plan.

There is one further contention made by appellants in case district 65-R is found to have been legally established. In such case appellants ask that a mandatory injunction issue requiring district 65-R to perform certain conditions contained in the plan adopted by the electors as it relates to what was district 49.

Appellants contend the Act is unconstitutional because

it permits, and here permitted, gerrymandering; because it does not provide for due process within the requirements of both state and federal constitutions; because it delegates legislative powers without providing adequate limitations or standards for carrying them out; because the Act fails to provide for appeal to the courts from the action of county committees in fixing the boundaries of proposed districts; and because the Legislature may not delegate legislative functions to private individuals. All of these questions were raised and fully discussed and answered by our opinion in Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566. We see no need for repeating what was said therein but, by reason of what we held therein, find these contentions to be without merit.

The constitutionality of the unit system of voting, as provided for by section 79-426.15, R. S. Supp., 1951, is also inferentially questioned. This statute, insofar as here material, provides: "In such elections, all the rural territory in the proposed changes shall vote as a unit; * * *. If any existing high school district is included in the proposed district, it shall constitute a separate voting unit. Approval of the plan shall require a majority of all electors within each voting unit voting on the proposed plan."

We think the principle here controlling is announced by the following language from Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151, which we quoted with approval in Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700, and Nickel v. School Board of Axtell, *supra:* "Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. * * * The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.

Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

- As stated in Rowe v. Ray, 120 Neb. 118, 231 N. W. 689: "It may, by law, provide that two school districts may merge and become one, upon a vote of the electors of the two districts. It may and does authorize one city to annex an adjacent suburb or village upon a majority vote of the electors thereof, and by the consent of the municipal authorities of the larger city. In all such cases the legislative function has been performed. The legislature, in those cases, has fixed the terms and conditions on which an electorate, which is definite and

certain, may determine whether the act of the legislature shall become operative."

Here the Legislature has fixed the conditions, which are definite, upon which the electorate may determine whether or not the legislative act of any county committee, taken pursuant to authority delegated to it, shall become operative. We find the Legislature had the power to do so.

We shall next consider appellants' contentions in regard to irregularities in the proceedings of the Lincoln County reorganization committee. This committee will hereinafter be referred to as the county committee. We shall first set out in general the procedure followed by the county committee in formulating and adopting its plan for district 65-R. It caused a "Notice" to be published in The Wallace Winner, a legal weekly newspaper published at Wallace in the county of Lincoln. This "Notice" was published pursuant to the requirements of section 79-426.10, R. R. S. 1943, and fixed the place of public hearing in the high school auditorium at Wallace at 8:00 p. m. on Tuesday, March 10, 1953. The meeting at Wallace was held and, after a discussion by those present of a plan for redistricting the Wallace community, the county committee approved a plan for redistricting which included district 49. These plans were then submitted to the State Committee for Reorganization of School Districts. The state committee reviewed the plans on March 27, 1953, and, by letter dated March 31, 1953, advised the county committee that it recommended that the plan proposed be submitted to the electors of the proposed district. This letter was received by the county committee on April 3, 1953. The county committee approved the action of the state committee and fixed the date of the election as June 3, 1953. Notice of the election was given as required by section 79-426.15, R. S. Supp., 1951, in the Lincoln County Tribune, a legal weekly newspaper, published at North Platte in Lincoln County. The election re-

sulted in the proposed plan of reorganization being approved by a majority of all electors voting in both the rural territory and the high school district contained in the proposed district.

The appellants contend the doctrine of estoppel has application here because of certain facts hereinafter discussed. We have said:

"Ordinarily the doctrine of equitable estoppel cannot be invoked against a municipal corporation in the exercise of governmental functions but exceptions are made where right and justice so demand, particularly where the controversy is between one class of the public as against another class." May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

"While ordinarily a municipality may not be estopped by the unauthorized conduct, representations, promises and pledges of its officers, it may within the limitation of its legal powers be estopped by its official acquiescence in and approval of acts originally unauthorized." May v. City of Kearney, supra. See, also, State ex rel. Cox v. McIlravy, 105 Neb. 651, 181 N. W. 554.

There is evidence that at the meeting held on March 10, 1953, which was called by the county committee, maps of a proposed school district for the Wallace area were distributed which did not include district 49, although the map of the proposed area submitted by the county committee to the state committee did include it. That the question of including district 49 was fully discussed at this meeting is evidenced by the minutes thereof which sets out that "a long and heated discussion" was had on this subject. Subsequent thereto, and at the same meeting, the county committee unanimously voted to approve plans for a proposed district which included district 49. Even if the map already referred to was distributed at that meeting it is evident no one was misled thereby.

Appellants introduced the minutes of the county committee's meeting of November 21, 1950. At this meet-

ing, after discussion was had of a proposed district of the Wallace community, the county committee decided not to include district 49 therein. This action would in no way estop the county committee from again considering this matter at a subsequent meeting, such as the meeting held on March 10, 1953. The county committee had a perfect right at the meeting on March 10, 1953, to reconsider the matter and include district 49 in any proposed plan which it might then decide to approve and submit to the state committee.

Appellants also introduced evidence of a meeting held on February 2, 1953, which was called by the school board of district 65 (Wallace). This meeting was held in the high school auditorium at Wallace and appears to have been largely attended by board members and patrons of district 65 and elementary rural school districts adjacent thereto. These rural districts had been and were contracting with district 65 for school purposes. Included were all the rural school districts subsequently included in district 65-R except district 49. The latter district had been maintaining its own school.

At this meeting a motion was adopted which had the effect of recommending to the county committee that district 49 be included in any reorganization plans for the Wallace area. We see nothing wrong with this meeting, or other meetings of a similar character, and cannot see how its action can result in estoppel. The desires of the public in such matters are, and naturally should be of concern to the county committee but, of course, in no way binding on them. What plan, if any, the county committee would propose to the state committee was entirely up to the county committee.

The electors of district 49 were notified of the public hearing on March 10, 1953. The record shows they attended this meeting and fully expressed their views to the county committee on the question of whether or not their district should be included in any proposed plans for the reorganization of the Wallace community. That is

what the Act contemplates. See section 79-426.10, R. R. S. 1943. We find no merit to this contention.

Appellants complain of the failure of the minutes of the meeting held by the county committee on March 10, 1953, to show there was any discussion during that meeting with reference to the convenience and welfare of the pupils involved in the reorganization, or to the transportation problems involved, or that the county committee considered these matters in its preparation of the plan adopted.

Section 79-426.10, R. R. S. 1943, provides in part as follows: "Before any plan of reorganization is completed by the county committee, it shall hold one or more public hearings. At such hearings, it shall hear any and all persons interested with respect to (1) the merits of proposed reorganization plans, * * *. The county committee shall keep a record of all hearings in the formulation of plans for the reorganization of school districts."

Section 79-426.09, R. S. Supp., 1953, provides in part as follows: "In preparation of a plan for reorganization of school districts, the county committee shall give due consideration (1) to the educational needs of local communities, (2) to economies in transportation and administration costs, (3) to the future use of existing satisfactory school buildings, sites, and play fields, (4) to the convenience and welfare of pupils, (5) to a reduction in disparities in per-pupil valuation among school districts, (6) to the equalization of the educational opportunity of pupils, and (7) to any other matters which, in its judgment, are of importance."

We held in Hull v. City of Humboldt, 107 Neb. 326, 186 N. W. 78, to the effect that where the law requires that a record of proceedings be kept, but does not prescribe what such record shall contain, the omission from the record of such items not specifically required to be recorded is not a fatal defect.

And, as stated in Majerus v. School District, 139 Neb.

823, 299 N. W. 178: "The law presumes official acts of public officers, in a collateral attack thereon, to have been done rightly, and with authority, in the absence·of evidence to the contrary, and, in such a collateral attack, acts done, which pre-suppose the existence of other acts to make them legally effective, are presumptive proof of the existence of such other acts."

In view of the foregoing we do not think the minutes of the meeting of March 10, 1953, are fatally defective.

Appellants further contend the county committee acted arbitrarily and unreasonably by including district 49 in their proposed plan of reorganization because, by doing so, they completely disregarded the convenience and welfare of the pupils therein and the transportation problems involved. In support thereof appellants cite the principle that a court of equity will interfere to control or review the acts of public officials involved with discretionary power when fraud, corruption, oppression, or gross injustice is plainly shown. See Felker v. Roth, 346 Ill. 40, 178 N. E. 381.

As stated in In re Pittsburg's Petition, 217 Pa. 227, 66 A. 348: " 'Restraints on the legislative power of control must be found in the constitution of the state, or they must rest alone in the legislative discretion. If the legislative action operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right through the ballot box all these wrongs: * * *.' "

We held in Nickel v. School Board of Axtell, *supra,* that questions of public policy, convenience, and welfare, as related to the creation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, or any change in the boundaries thereof, are, in the first instance, of purely legislative cognizance and when such duties are delegated to the county committees and performed by them they retain such character and are not subject to judicial review. See, also,

Leeman v. Vocelka, 149 Neb. 702, 32 N. W. 2d 274.

As to this issue there is a further answer. As stated in Hahn System v. Stroud, 109 Neb. 181, 190 N. W. 572: " 'A suit in equity will not lie when the plaintiff has a plain, adequate and speedy remedy at law.' Western Union Telegraph Co. v. Douglas County, 76 Neb. 666."

In Nickel v. School Board of Axtell, *supra,* we held that if any action taken by the county committee was appealable sections 25-1901 and 25-1911, R. R. S. 1943, fully met the requirements of Article I, section 24, of the Constitution of the State of Nebraska.

What is factually contended for by appellants as supporting this contention is answered by the following principle quoted with approval in Nickel v. School Board of Axtell, *supra:* " 'In general, a school district or other local school organization must. be so formed or laid out as to afford to all the children within its boundaries an opportunity to enjoy with reasonable facility the benefits of the school; but every reasonable presumption is to be indulged in favor of a district as created and laid out, and. equal convenience to all the children is not essential, since it is impossible to prevent varying degrees of convenience or inconvenience to children living in different parts of any district.' 78 C. J. S., Schools and School Districts, § 31, p. 686."

Even if the matters complained of were properly here for our consideration, we can find nothing in the record which would support this contention as the county committee's action in the matter seems reasonable and proper.

We come next to the appellants' claimed defects in connection with the special election held at which the proposed plans were approved.

First appellants contend the following requirements of section 79-426.15, R. S. Supp., 1951, were not complied with: "Not less than sixty nor more than one hundred twenty days after receipt by the county committee of the action of the state committee, the proposition of adoption or rejection of the proposed plan of reorganization

shall be submitted at a special election to all the electors of districts within the county whose boundaries are in any manner changed by the plan of reorganization."

The record shows the state committee acted on the proposed plan for reorganization on March 27, 1953; that by letter dated March 31, 1953, it advised the county committee of its action, which letter the county committee received on April 3, 1953; that on April 23, 1953, the county committee approved the action of the state committee and fixed the date for an election thereon as June 3, 1953; and that on June 3, 1953, such election was held. We find this meets the requirements of the act relating thereto.

Because of the provisions of section 79-426.09, R. S. Supp., 1953, appellants contend district 49 should have been organized into a voting unit by itself and that it would have required at least 55 percent of the voters of the district to be in favor of being annexed to district 65-R before it could be included therein. In support of this contention they offered to produce as witnesses more than half of the voters of district 49 who they stated would testify they had voted "No" on the question of reorganization at the election held on June 3, 1953. Objection to this offer was sustained.

This section of the statute, insofar as here material, provides: "When the county committee at any time determines that some reorganization of districts is desirable, it shall proceed to prepare a plan or plans, showing which specific changes are recommended; Provided, that no district or districts where the major portion of such district or districts is a distance greater than halfway to the next Class II, III, IV, V, or VI school district may be included in the voting unless the separate area is more than a distance halfway from the nearest corporate limits of the city or village in which the schools are operated to the nearest corporate limits of the city or village of the next Class II, III, IV, V, or VI school district shall be organized into a voting unit

by itself, with the requirement that at least fifty-five per cent of the voters are in favor of being annexed in the new school district or to remain in their former rural districts and subject to future inclusion in the already established school district closer to it."

As written the foregoing language is ambiguous as to its exact meaning in regard to the following: First, nothing is therein indicated as to how such "distance" shall be determined. We shall assume it means the distance along section lines as that is the ordinary place where roads are established for the public's use. Second, it leaves some doubt as to whether "distance" relates to boundaries of the school districts therein referred to or to the corporate limits of any city or village located therein in which the school is operated. We think the distance requirement relates to the nearest corporate limits of the city or village in which the school is being operated and not to the boundaries of the school district itself.

While there is evidence in the record to the effect that the major portion of district 49 is closer to Grainton than to Wallace, the map of this area does not disclose such to be a fact. The map discloses that Wallace lies about $6\frac{1}{2}$ miles north of the northeast corner of district 49 whereas Grainton lies 2 miles west and about $5\frac{1}{2}$ miles north of the northwest corner of district 49. Thus it becomes evident that the major portion of district 49 is closer to Wallace than Grainton. It is therefore apparent that this evidence was properly excluded as district 49 could be and properly was included with all the other rural districts for voting purposes.

Section 79-426.14, R. R. S. 1943, provides in part as follows: "The proposed plan, as finally adopted by the county committee, shall be submitted at a special election called and held as provided in section 79-426.15."

Section 79-426.15, R. S. Supp., 1951, as to the election, provides in part as follows: "* * * the proposition of adoption or rejection of the proposed plan of reorganiza-

tion shall be submitted at a special election to all the electors of districts within the county whose boundaries are in any manner changed by the plan of reorganization." And, "Such election shall be held and conducted by election officers charged with the duties of holding general elections."

While most of the proposed district lies in Wallace precinct parts thereof do lie in Hooker, Dickens, and Willow precincts. The place of election, as evidenced by the notice thereof, was fixed as the Village Hall in Wallace, which is in Wallace precinct. Appellants contend that a voting place should have been established in each precinct in which part of the proposed district was located because the general statutes so provide. It will be observed the Act does not provide where the election shall be held but does provide it shall be submitted at a special election and who is to hold and conduct it. In such a situation we think any convenient place in the proposed district could have been designated for that purpose by the county committee.

As already stated the foregoing language provides who shall hold and conduct such election. At its meeting on April 23, 1953, the county committee directed that the county clerk be placed in charge of the election and notified of that fact. There is no evidence in the record as to who actually did perform these services. In the absence thereof the following holding has application: "In absence of evidence showing misconduct or disregard of law, regularity of official acts is presumed." Campbell Co. v. City of Harvard, 123 Neb. 539, 243 N. W. 653.

There is no evidence that any voters, including those from school district 49, were inconvenienced or prevented from voting by having the voting place in Wallace. In this situation we think the following applies: "The statutory provisions as to the place of holding the election and the manner of changing the voting places are mandatory upon the officers charged with that duty, and

will be strictly enforced in a direct action instituted before an election, but after an election such statutory requirements are directory, unless it appears that the failure to hold elections at the place resulted in fraud and prevented the electors from giving a full and free expression of their will at the election, * * *." Semke v. Wiles, 101 Okla. 105, 224 P. 312. See, also, State ex rel. Marlow v. Himmelberger-Harrison Lumber Co., 332 Mo. 379, 58 S. W. 2d 750; 29 C. J. S., Elections, § 78, p. 104, § 199, p. 284.

There is another principle here applicable as to all questions raised in regard to the election. It is stated by this court in State ex rel. Hunt v. Mayor and City Council of Kearney, 28 Neb. 103, 44 N. W. 90, as follows: "The statute has provided an adequate remedy, either by contest or quo warranto, for the settlement of the rights of parties in election cases, and those remedies are exclusive."

Having come to the conclusion that district 65-R was legally established, the only question remaining is appellants' request that certain conditions contained in the plan submitted to the electors of the district, and approved by them, be specifically performed. In the published notice this condition appeared in the following language: "The Lincoln County Reorganization Committee and the Nebraska State Reorganization Committee have recommended that a school be maintained in District No. 49, at the present site, until approved transportation can be provided to all families with children."

Appellants offered evidence to the effect that such transportation was not possible in view of the conditions of the roads in district 49. This cause was tried on January 25 and 26, 1954. The evidence shows that district 65-R had not, since the opening of school in the fall of 1953, maintained a school in what was district 49. It has, however, at all times when school was being held in Wallace, maintained an adequate and satisfactory bus service for all pupils in district 49 whose parents

desired their children to attend school in Wallace. By doing so district 65-R has fully met the requirements of the conditions imposed upon it by this language and to now force it to maintain a school in district 49 would defeat the very purpose of the reorganization.

In view of the foregoing we find the decision rendered by the trial court to be correct. It is therefore affirmed.

AFFIRMED.