Paul Egan, Frank Ropinske, and The United West Suburban Commuters Committee, Appellants, v. Chicago, Aurora & Elgin Railway Company, Chicago Transit Authority, George R. Perrine et al., Appellees.

Gen. No. 47,370.

First District, First Division.

September 29, 1958.

Released for publication October 23, 1958.

Harry R. Booth, of Chicago, for plaintiffs-appellants.

William J. Lynch, William S. Allen, Joseph P. Roth, James E. Hastings of Chicago, for Chicago Transit Authority, appellee.

Friedman, Zoline & Rosenfield of Chicago (Joseph T. Zoline, Morton J. Haberman, of counsel) for Chicago, Aurora and Elgin Railway Company, defendant-appellee.

Latham Castle, Attorney General, Harry R. Begley, Special Assistant Attorney General (Elmer Michael Walsh, Jr., of counsel) for Illinois Commerce Commission, appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from an order dismissing an amended complaint for temporary and permanent injunctive relief compelling the Chicago, Aurora & Elgin Railway Company (hereinafter called the Railroad) to restore passenger service between certain cities and villages west of Chicago and the Chicago loop. Plaintiff is the Mayor of Aurora, one of the cities formerly serviced by the Railroad. Defendants are the Railroad, the Chicago Transit Authority, and members of the Illinois Commerce Commission. Plaintiffs have confined the scope of their appeal to the single question of the jurisdiction of the court of equity over the subject matter of the complaint.

The facts pertinent to a decision are that prior to September, 1953, the Railroad operated a passenger service for commuters between the Chicago loop and the cities of Aurora, Elgin, Batavia, and certain intermediate western suburbs. A portion of the right of way used by the Railroad was an elevated structure

owned by the Chicago Transit Authority. During the construction of the Congress Street Expressway in Chicago, neither the Transit Authority nor the Railroad was able to make use of this structure. By agreement with the State and the City of Chicago, the trains of the Transit Authority were rerouted over a street-level right of way several blocks away. It was not feasible for the Railroad also to employ the new route because of congested vehicular traffic during the morning and evening rush hours when its own traffic was the heaviest. In January, 1952, the Railroad petitioned the Illinois Commerce Commission for authority to suspend operation into the loop pending the completion of the Expressway. After extensive hearings before the Commission the Railroad was allowed to establish its eastern terminus in the Village of Forest Park where its own right of way had connected with that of the Transit Authority. The West Suburban Transportation Council appealed to the Circuit Court of Du Page County to have the order of the Commission set aside. The order was upheld and a subsequent appeal to the Illinois Supreme Court was dismissed.

On November 19, 1955, the Railroad filed another petition with the Commission requesting authority to suspend all passenger service because of financial loss and a decline in the number of passengers making use of its service. Throughout 1956 and 1957 the Illinois Commerce Commission had been conducting hearings on the petition of the Railroad for authority to cease passenger operations in which plaintiffs participated.

On December 9, 1955, the plaintiff filed the original complaint in this cause seeking an injunction against any further suspension of service by the Railroad. Defendants filed separate motions to dismiss the complaint for failure to state a cause of action and for want of jurisdiction over the subject matter. The

motions were sustained and the complaint was dismissed with leave to amend on April 18, 1956. Plaintiff filed an amended complaint on May 21, 1956. It consisted of more than fourteen typewritten pages and contained over thirty separate counts. In substance, it purports to set forth plaintiff Egan's capacity to maintain the suit, identifies the parties defendant, and purports to relate the history of the operation of the Chicago, Aurora & Elgin Railway Company as a public utility. It closed with a prayer for a decree enjoining the sale of any property by the Railroad, restraining its officers and agents from paying out any money beyond the necessary expenses of operating passenger service, and requiring the restoration of passenger service into Chicago upon routes approved by the court. Defendants again filed separate motions to dismiss the complaint for failure to state a cause of action and for want of jurisdiction. On March 28, 1957, one Frank Ropinske, a commuter, and The United West Suburban Commuters Committee petitioned to intervene and be made parties plaintiff to the suit.

From May, 1956, to March, 1957, there was no ruling on the motions of defendants to dismiss the amended complaint. On March 29, 1957, the court entered an order allowing intervention and enjoining the then threatened suspension of passenger service until the Illinois Commerce Commission entered its final order on the petition then pending before it. Five days later, on April 3, 1957, the Commission entered its final order authorizing the suspension of passenger service by the Railroad. On June 25, 1957, plaintiffs moved for a modification of the temporary injunction entered on March 29. An answer to this motion was filed by the Railroad and on July 9, 1957, the court entered its final order sustaining the motions of the various defendants to dismiss the amended complaint and deny-

ing all motions by plaintiffs for temporary or permanent relief. Plaintiffs' motion for a rehearing was denied in August, 1957, and this appeal followed.

In essence, plaintiffs' amended complaint attempts to circumvent the jurisdiction and authority of the Illinois Commerce Commission on the basis of public need. They contend that the public interest requires equity to supervise the operation of a public utility in order to alleviate any distress the public may have suffered as the result of a proceeding before an administrative agency established to regulate utilities. Plaintiffs submit that the Illinois Commerce Commission was without jurisdiction to grant the restoration of service requested; that the broad jurisdiction of Illinois courts supports jurisdiction in the instant case; that the amended complaint demonstrates a clear public need for passenger service into Chicago; that restoration of such service may only be accomplished by an equity decree, and that equity has jurisdiction on the basis of alleged fraud and in order to prevent a multiplicity of suits. We can find no merit in any of these contentions.

Section 49a of the Illinois Public Utilities Act provides as follows (Ill. Rev. Stat. 1957, chap. 111⅔, par. 49a):

"No public utility shall abandon or discontinue any service without first having secured the approval of the commission, except in case of assignment, transfer, lease or sale of the whole or any part of its franchises, licenses, permits, plant, equipment, business or other property to any political subdivision or municipal corporation of this State. In granting its approval, the commission may impose such terms, conditions or requirements as in its judgment are necessary to protect the public interest. Provided, however, that any public utility abandoning or discontinuing service in pursuance of authority granted by the commission shall be deemed to have waived any and all objections

134

to the terms, conditions or requirements imposed by the commission in that regard. Provided, further, that nothing in this section shall be construed to limit the right of a public utility to discontinue service to individual patrons in accordance with the effective rules, regulations, and practices of such public utility.

"The commission, after a hearing upon its own motion or upon petition of any public utility, shall have power by order to authorize or require any public utility to curtail or discontinue service to individual customers or classes thereof, or for specific purposes or uses, and otherwise to regulate the furnishing of service, whenever and to the extent such action is required by the convenience and necessity of the public during time of war, invasion, insurrection or martial law, or by reason of a catastrophe, emergency, or shortage of fuel, supplies or equipment employed or service furnished by such public utility; provided, however, that an interim order, effective for a period not exceeding fifteen days, may be made without a hearing if the circumstances do not reasonably permit the holding of a hearing. Orders for the curtailment or discontinuance of service pursuant to this paragraph shall not be continued in effect for any period beyond that which is reasonably necessary, and shall be vacated by the commission as soon as public convenience and necessity permit. Every such order, during the period it is in effect and for such further period, if any, as the commission may provide, shall have the effect of suspending the operation of all prior orders or parts of orders of the commission inconsistent therewith. No public utility shall be held liable for any damage resulting from any action taken, or any omission to act, pursuant to or in compliance with any order under this paragraph for the curtailment or discontinuance of service unless such order was procured by the fraud of the public utility."

Provision for review of an order or decision of the Commission is found in Section 68 of the Act (Ill. Rev. Stat. 1957, chap. 111⅔, par. 72). Such review may be had in the circuit court of any county where the subject matter of the hearing and order is situated within thirty days after a rehearing or the refusal of an application for rehearing by the Commission. In Thompson v. Illinois Commerce Commission, 1 Ill.2d 350 (1953), our Supreme Court held that, upon such review, the circuit court has the power to set aside an order of the Commission which it finds unlawful and unreasonable, but no power to remand the cause to the Commission for another hearing. In that case the circuit court had set aside an order of the Commission denying the trustee of a railroad the authority to discontinue the operation of two passenger trains. Similar review was the proper legal remedy for any inconvenience to the public caused by the order of the Commission. Plaintiffs were parties to and participated in the hearings but took no steps to appeal the order.

■■ The ancillary grounds upon which plaintiffs seek to invoke the jurisdiction of equity are contrary to settled principles of law. A mandatory injunction is an extraordinary remedial process which is not a matter of right, but may be granted only upon the exercise of sound judicial discretion in cases of great necessity. Lyle v. City of Chicago, 357 Ill. 41 (1934). Plaintiffs predicate their claim to such relief on the Commission's want of jurisdiction over the Chicago Transit Authority (Fallon v. Illinois Commerce Commission, 402 Ill. 516 (1949)), on the power of equity to review the confiscatory effect of Commission orders pertaining to rate making (The Peoples Gas Light and Coke Co. v. Slattery, 373 Ill. 31 (1940)) and on alleged fraud and a threatened multiplicity of suits. Equity will not assume jurisdiction to grant an extraordinary

remedy such as that requested in the instant case solely because the Illinois Commerce Commission has no authority over the owner of a mere segment of the right of way formerly used by a public carrier which is completely within its jurisdiction. No property right on the part of the original plaintiff or the intervening plaintiffs has been set forth in the pleadings. For this reason the principle of equity jurisdiction enunciated in the Slattery case and related rate-making cases is inapplicable. The alleged fraud relates to the conduct of a member of the Commerce Commission and is insufficient on its face to warrant jurisdiction in the instant case. Felker v. Roth, 346 Ill. 40, 48 (1931).

We are unable to find any sound basis for equity to take jurisdiction of this cause.

Order affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.