THEODORE D. ERIKSEN ET AL., APPELLEES AND CROSS-APPELLANTS, V. BRAD RAY ET AL., APPELLEES, SCHOOL DISTRICT NO. 14 OF BURT COUNTY ET AL., APPELLANTS AND CROSS-APPELLEES.

321 N.W.2d 59

Filed June 25, 1982. No. 44033.

James B. Gessford of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P. C., for appellants School Dist. No. 14 et al.

Bradley D. Holtorf of Sidner, Svoboda, Schilke, Wiseman & Thomson, for appellees Theodore Eriksen et al.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

This appeal grows out of a suit for a declaratory judgment filed by Theodore D. Eriksen and others who are taxpayers and voters owning real property and residing within School District Nos. 14 and 46 of Burt County, Nebraska, to determine the validity of a plan for the reorganization of School District Nos. 14, 17, 43, 46, 48, 52, and 62, all in Burt County, Nebraska. School District Nos. 17, 43, 46, 48, 52, and 62 were Class I school districts, and School District No. 14 was a Class III school district. The method employed for the reorganization was by the election method, pursuant to the provisions of Neb. Rev. Stat. §§ 79-426.01 to 79-426.22 (Reissue 1976). Following trial to the court, over the objection of the members of the Burt County Committee for School District Reorganization, the individual school districts involved, and the school board members of the Oakland-Craig School District, the trial court found that a suit for declaratory judgment was an appropriate method to test the questions raised by the suit. The trial court further held that the plan of reorganization was null and void due to the fact that certain preliminary steps, required to be taken prior to submitting the issue to the electors, which were not taken, were mandatory. We believe that the trial court was in error with regard to its determination concerning the use of a declaratory judgment, and therefore reverse and dismiss the action.

The parties concede that the facts of the case are not substantially in dispute, though they do dispute the legal effect of the facts. The record discloses that a proposal for reorganization was filed in the of-

fice of the Burt County superintendent of schools on July 10, 1980. The county reorganization committee then scheduled a public hearing and meeting on August 4, 1980. Notice of the public hearing was published on July 17, 1980, more than 10 days prior to the hearing, in The Burt County Plaindealer, Oakland Independent and Republican, and Lyons Mirror-Sun. Notice of the public hearing was also posted at the Burt County Courthouse, at all schoolhouses involved, two public places in Oakland, Nebraska, and one public place in Craig.

The county committee held the hearing and meeting. At the meeting the proposal was discussed, and the county committee tentatively agreed upon and approved the plan. After the hearing and meeting the proper officials formally signed the proposed plan and filed it, with its maps and boundaries, with the county superintendent as required by § 79-426.08(2). The county superintendent, however, failed to give notice of the filing of the maps and statement as required by § 79-426.08(3). There is no evidence that anyone was misled by his failure to give notice of the filing.

The proposed plan, as tentatively agreed upon and approved by the county reorganization committee, called for the merger of the Class I School District Nos. 17, 43, 46, 48, 52, and 62 into the Class III School District No. 14. It further provided that School District No. 14 would, prior to the merger, obtain the approval of its voters to issue bonds for a new elementary school, and that the liability for these bonds would remain the responsibility of School District No. 14 as it existed prior to the merger, not to be assumed by the enlarged district. See § 79-426.17. The proposed plan was conditioned upon both approval of the bond election by the voters of School District No. 14 as well as the ultimate approval of the entire plan by the electors of the various districts involved. As required by statute, the plan was then sent to the

state reorganization committee and approved by it on September 5, 1980. See § 79-426.12.

The county committee then scheduled a public meeting for September 8, 1980, at 4 p.m. It posted notice of the meeting on August 28, 1980, on all of the schoolhouses involved and published notice of the meeting in the Oakland Independent on September 4, 1980. At this meeting the committee designated the proposed plan as the final approved plan and set October 14, 1980, as the date at which the plan would be submitted to a vote of all the interested parties as required by law. See §§ 79-426.13 and 79-426.15.

On the evening of September 8, 1980, School District No. 14 held a board meeting and passed a resolution calling for a bond election to be held on October 7, 1980. The question to be presented to the voters was whether district No. 14 should issue $1.95 million in bonds for a new elementary school. The resolution provided that the bonds would not be issued unless the reorganization plan was approved by all the interested groups. Notice of this meeting was published in the Oakland Independent on September 4, 1980. Additionally, various notices of the bond election, sample ballots, and school board proceedings were published in the Oakland Independent. The bond election was held in School District No. 14 on October 7, 1980, and was approved by the electors by a vote of 494 in favor of the bond issue and 389 opposed.

In the meantime, the notices of the reorganization election and sample ballots relating to that election were published. As previously stated, this election was held on October 14, 1980, and resulted in the proposition being approved. The voters in School District Nos. 17, 43, 46, 48, 52, and 62 voted 125 in favor and 111 against, and the voters in School District No. 14 voted 492 in favor and 385 against. Pursuant to statute, the county superintendent entered an order on November 7, 1980, carrying the plan into

effect. § 79-426.18. Thereafter, the appellees filed this action.

The first question we must address is whether an action for a declaratory judgment, pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 1979), was an appropriate remedy to contest a school reorganization accomplished by the election method. For purposes of examining this question it is critical that one recognize the distinction between effecting a school reorganization by what is commonly referred to as the "petition method" as opposed to effecting a reorganization by the "election method." The differences are important. While in both instances the electors of the affected districts have a voice, their manner of exercising that voice is significantly different. While the ultimate authority for changing the boundaries by either the petition method or the election method rests with the electors of the several districts involved, the effect of their action is quite different. Under the petition method, once a sufficient number of legal voters of each district have signed a petition, the superintendent must then act in accordance with the statute. See Neb. Rev. Stat. § 79-402 (Reissue 1976). Under the petition form of reorganization, the provisions of the statutes are mandatory and jurisdictional and the failure to comply with the requirements set out in the statutes generally causes the action taken by the county superintendent to be void. See *State ex rel. Larson v. Morrison,* 155 Neb. 309, 51 N.W.2d 626 (1952). Likewise, where proper petitions are filed, it is the mandatory duty of the superintendent to hold a hearing and, if the petitions are sufficient, to change the boundaries as requested. See *School Dist. No. 49 v. Kreidler,* 165 Neb. 761, 87 N.W.2d 429 (1958).

On the other hand, under the election method, a plan of reorganization is not effected until it is submitted at a special election to all the electors of the

districts within the county whose boundaries are in any manner changed by the plan of reorganization and approved by a majority of all electors voting within each voting unit included in the proposed plan. § 79-426.15. It is this final special election which causes the reorganization to take place, and requirements regarding the giving of notice and the holding of preliminary hearings prior to the special election, while important, are not jurisdictional.

Under the petition method, absent a valid petition, no jurisdiction vests in the county superintendent to change the boundaries. Under the election method it is the election itself which vests the jurisdiction in the county superintendent to make the changes. While, under the election method, one may bring an appropriate action *before* the special election is held, contesting the holding of the election because of a violation of the statute, it is clear that absent evidence of fraud or evidence that a voter was prevented from expressing his free will at the poll, once the election is held, preliminary requirements concerning the giving of notice, including the giving of the notice of the filing of a plan pursuant to § 79-426.08(3) or the manner in which the election is to be held, are merely directory and not jurisdictional. In *School District No. 49 v. School District No. 65-R,* 159 Neb. 262, 275-76, 66 N.W.2d 561, 570 (1954), we said: " 'The statutory provisions as to the place of holding the election and the manner of changing the voting places are mandatory upon the officers charged with that duty, and will be strictly enforced in a direct action instituted before an election, but after an election such statutory requirements are directory, unless it appears that the failure to hold elections at the place resulted in fraud and prevented the electors from giving a full and free expression of their will at the election, * * *.' " See, also, 26 Am. Jur. 2d *Elections* § 198 (1966). The errors, if any, alleged by appellees in this case were

of the type that made them only directory and not mandatory once the election was held. There is no evidence that any of the parties affected by this election were in any way misled or defrauded by reason of the failure of the superintendent to give notice of the filing of the plan. Nor is there any evidence that any elector was defrauded or misled by reason of there being a failure to perform any other preliminary matter to which appellees objected. Counsel for appellees conceded at oral argument before this court that the appellees in this case were fully aware of all the facts involved in the election but wished to take their chances with the outcome of the election before contesting the reorganization by filing suit.

We believe the more appropriate rule in cases of reorganization by election to be that, while the requirements concerning the giving of notice or the holding of a hearing preliminary to the special election will be strictly enforced in a direct action instituted before an election, once the election is held, absent a showing of fraud or evidence that electors were prevented from giving a full and free expression of their will at the election, they are merely directory. Once we recognize the distinction between reorganization by petition and reorganization by election, it becomes clear that the county school reorganization committee had jurisdiction to hold the special election and the county superintendent had authority to order the reorganization.

Regardless of how appellees may choose to characterize their action in the instant case, it was indeed a suit to contest the special election and as such should have been brought as an election contest as provided in Neb. Rev. Stat. §§ 32-1001 et seq. (Reissue 1978). See *Arends v. Whitten,* 172 Neb. 297, 109 N.W.2d 363 (1961). While there may have been some confusion by our earlier decisions in this matter, we now declare the rule to be that where legal voters of a school district involved in a school re-

organization by the election method wish to contest the reorganization, *after* the special election has been held, it must be done by an election contest pursuant to § 32-1001 et seq. This is the exclusive method by which such actions must be taken. The reasons for such holding should be obvious. There is a need that the issues be quickly resolved. The short periods provided for by the election contest statutes are designed specifically for the purpose of attempting to provide certainty to government and to determine as quickly as possible whether in fact the will of the people is to be carried out or the defects alleged are of such nature as to void the election and the subsequent reorganization. That should be done as quickly as possible.

Disregarding the provisions of statutes regarding an election contest and, instead, instituting an action for declaratory judgment thwarts such a goal and should not be permitted. Such a position is not new to our law and should come as no surprise. In *Murphy v. Holt County Committee of Reorganization,* 181 Neb. 182, 147 N.W.2d 522 (1966), we observed that the purpose of the Uniform Declaratory Judgments Act is to provide a procedure for the speedy determination of issues which would otherwise be delayed to the possible injury of the parties. We created no new cause of action and provided no cumulative remedy. Nor did we intend to permit the avoidance of an election contest where appropriate. That is why, in part, we said in *Scudder v. County of Buffalo,* 170 Neb. 293, 296, 102 N.W.2d 447, 450 (1960): "Where an exclusive remedy is provided, the declaratory judgment act does not provide an additional remedy. A declaratory judgment action can afford no relief to one who has failed to pursue a full, adequate, and exclusive statutory remedy." The trial court should have determined that the election contest was the exclusive remedy in this case and should have dismissed the action when

requested by appellants. We do so now. The action is reversed and dismissed.

REVERSED AND DISMISSED.