777 N.W.2d 322 (2010)
279 Neb. 251
Philip PIERCE et al., appellants,
v.
Paul DROBNY, president of the board of education of Knox County School District # 0583, et al., appellees.
No. S-09-400.
Supreme Court of Nebraska.
January 15, 2010.
*323 Thomas H. DeLay, of Jewell, Collins, DeLay, Flood & Doele, Norfolk, for appellants.
John F. Recknor and Randall Wertz, of Recknor, Wertz & Associates, Lincoln, and Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, Norfolk, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Philip Pierce, along with several other Knox County School District residents (collectively referred to as "the Residents") filed a complaint against Knox County School District No. 0583, its board of education, and Paul Drobny in his capacity as the president of the board (collectively referred to as "the School Board"), alleging violations of the Open Meetings Act (OMA)[1] with respect to the issuance of school bonds. The School Board moved to dismiss the complaint, claiming that it failed to state a claim upon which relief could be granted. The court granted the School Board's motion to dismiss, and the Residents perfected this appeal. *324 The issue presented in this appeal is whether the Residents waived their claims by failing to challenge the election that approved the bond issue.

BACKGROUND
The Residents alleged in their complaint that the School Board substantially violated the OMA by holding secret meetings, without notice, agenda, or public participation. They alleged that these secret meetings occurred before the passage of any resolution and that at the meetings, facility reviews were discussed, new construction was discussed and reviewed, and bond issues were discussed and voted upon as the preferred funding for the construction of new school buildings. Then, on August 20, 2008, the School Board publicly met and passed a resolution which authorized a special election for the issuance of bonds for the construction of a new school.
Although the Residents were presumably aware of the alleged violations during the preliminary stages leading to the resolution, they did not file any action against the School Board and instead waited to see if the bonds would pass in the public election. On November 4, 2008, an election was held at which the electors voted in favor of issuing bonds for the new school construction. However, no bonds have actually been issued yet.
The Residents filed their complaint on January 22, 2009. The complaint did not plead a claim under the election contest statutes. Instead, the Residents asked for an order under the OMA declaring the August 20, 2008, resolution void. Their claim would have been timely under the OMA.[2]
But in their complaint, the Residents further alleged that the November 4, 2008, vote in favor of the bonds was a direct result of the illegal secret meetings of the School Board and was, like the August 20 resolution, also void. Based on that allegation, the district court concluded that the Residents' suit was simply an election contest[3] and that because the Residents did not file suit within the time period specified by the election contest statutes, their complaint was untimely. Further, the court explained that a judgment voiding the resolution would be merely advisory, as the election had been held and the bond issue adopted.
Accordingly, the district court dismissed the complaint without leave to amend. The Residents appealed. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[4]

ASSIGNMENTS OF ERROR
The Residents argue, consolidated and restated, that the district court erred in dismissing the complaint with prejudice because (1) the facts pleaded in the complaint establish violations of the OMA, and a declaration as such would not constitute an advisory opinion; (2) the court's failure to allow the Residents an opportunity to amend was an abuse of discretion; and (3) the Residents have a legally cognizable interest in enforcing the relief provided by the OMA.

STANDARD OF REVIEW
Dismissal under Neb. Ct. R. Pldg. § 6-1112(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face *325 of the complaint that there is some insuperable bar to relief.[5] An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim.[6] When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff.[7]

ANALYSIS
The Residents assert that the district court erred in dismissing their complaint without leave to amend for failure to state a claim. They maintain that this suit is not an election contest and that to the extent their complaint indicated they were attempting an election contest, they should be allowed to strike it. Instead, the Residents explain, they seek an order under § 84-1414 voiding the August 20, 2008, resolution to submit the issue through a public election.
But the Residents do not clearly explain how they would benefit from such an order now that the election has been held. They indicate that they might next seek an order enjoining the issuance of the bonds. The Residents maintain that passing a valid resolution to submit the bond issue to the electors is a mandatory condition precedent to a vote upon issuance of bonds and that because the resolution was allegedly based on information obtained in violation of the OMA, no bonds may be issued.
At the outset, we find little merit to the Residents' attempts to characterize their claim as a challenge to a bond issue instead of as a challenge to the election at which the bond issue was approved. The Residents' goal may be to prevent the issuance of the bonds, but they seek to enjoin it based on an alleged defect in the preliminary stages in the process leading up to the election. The real question in this case is whether, once an election takes place, a challenge under the OMA to preliminary stages leading up to the election is effectively subsumed by the election contest provisions of Neb.Rev.Stat. §§ 32-1101 through 32-1117 (Reissue 2008). We hold that an election contest is the exclusive remedy under such circumstances and that a separate challenge under the OMA does not exist once the issue is voted upon by the public.[8]
A similar issue was addressed by this court in Eriksen v. Ray.[9] In Eriksen, we held that an election contest under § 32-1101 was the exclusive method to challenge a school reorganization once that reorganization was voted upon in a public election. The taxpayers in Eriksen alleged that in the preliminary stages leading up to the election, the county superintendent had failed to give notice of the filing of the maps and the statement of a proposed plan calling for a merger, as required by the school organization and reorganization statutes.[10] The proposed plan eventually led to a resolution calling for a bond election asking the voters whether bonds should be issued for a new elementary school in conjunction with a reorganization plan. The electors approved the bond and its corresponding reorganization plan.
*326 We explained that it was the election that actually caused the reorganization to take place. While the voters could have brought an appropriate action before the election was held, once the election had been held, absent evidence of fraud or evidence that a voter was prevented from expressing his or her free will at the poll, "preliminary requirements concerning the giving of notice . . . or the manner in which the election is to be held, are merely directory and not jurisdictional."[11] In other words, we reasoned that after an election has been held, only challenges directed at the fairness of the election remained cognizable.
Thus, we explained that although a taxpayer might be able to bring other appropriate statutory actions before an election is held, the election contest statutes provide the exclusive method to challenge the action once an election has taken place. To hold otherwise, we said, would thwart the goals of § 32-1101 and its limited statute of limitations "designed specifically for the purpose of attempting to provide certainty to government and to determine as quickly as possible whether in fact the will of the people is to be carried out."[12] We concluded: "Regardless of how [the taxpayers] may choose to characterize their action in the instant case, it was indeed a suit to contest the special election and as such should have been brought as an election contest. . . ."[13]
We have never before specifically addressed the relation-ship of the election contest statutes to actions under the OMA. As the Residents point out, the OMA sets forth an action to void a resolution, an action that is arguably more specific than that brought by the taxpayers in Eriksen under the declaratory judgment act.[14] Nevertheless, we find much of the same reasoning applies. The OMA is generally applicable to public meetings at which policies are usually adopted by committees, and those policies are usually not subject to a public election.[15] But § 32-1101 provides that "[s]ections 32-1101 to 32-1117 shall apply to contests of any election" and that such contests encompass "any proposition submitted to a vote of the people." (Emphasis supplied.) We reasoned in Eriksen that it is the nature of the relief sought, not the underlying defect alleged, that determines whether the election contest statutes are implicated. The relief sought here is clearly the undoing of the effect of the election. And, as Eriksen suggests, the election contest statutes are the only statutory means for doing so.
And, as pointed out in Eriksen, there are also particular public policy reasons to limit challenges to election results to the election contest provisions. We have often said that one cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong.[16] Similarly, one cannot wait on the outcome of an election to decide whether to complain about a preliminary error. We conclude that once an election has been held, challenges to its outcome are properly limited to matters that could compromise the accuracy of the results.
*327 Thus, while the Residents have filed a timely claim under the OMA, they have failed to state a claim upon which relief can be granted. The relief they ultimately seek is the invalidation of the election results, and the only statutory means for invalidating an election is found in §§ 32-1101 through 32-1117.
In their reply brief, the Residents also argue that they are challenging the postelection ability of the School Board to certify the bonds under Neb.Rev.Stat. § 10-707 (Reissue 2007). Contrary to the Residents' suggestion, we find this statute wholly inapplicable to the process leading to the resolution to hold an election. Section 10-707, generally described, requires certification under oath of the procedures and results of a bond election. It does not require certification of the preliminary proceedings that led to the election, including the school board vote that called for it. We express no view on whether the inability to comply with § 10-707 might, under other circumstances, warrant judicial relief. It is sufficient to say that in this case, the Residents' allegations do not implicate the requirements of § 10-707.
We agree with the district court that the Residents have no remedy under the OMA or any other statutory provisions which they argue might be applicable. Amendment of the complaint would not cure this defect. Therefore, we find no merit to any of the Residents' assignments of error.

CONCLUSION
We conclude that the Residents' complaint was properly dismissed without leave to amend for failure to state a claim. The judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. §§ 84-1407 through 84-1414 (Reissue 2008).
[2] See § 84-1414.
[3] See Neb.Rev.Stat. § 32-1101 (Reissue 2008).
[4] Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[5] Crane Sales & Serv. Co. v. Seneca Ins. Co., 276 Neb. 372, 754 N.W.2d 607 (2008).
[6] Id.
[7] Id.
[8] See, Eriksen v. Ray, 212 Neb. 8, 321 N.W.2d 59 (1982); Murphy v. Holt County Committee of Reorganization, 181 Neb. 182, 147 N.W.2d 522 (1966).
[9] Eriksen v. Ray, supra note 8.
[10] See id.
[11] Id. at 13, 321 N.W.2d at 63.
[12] Id. at 15, 321 N.W.2d at 63.
[13] Id. at 14, 321 N.W.2d at 63.
[14] See, Neb.Rev.Stat. § 25-2001 (Reissue 2008); § 84-1414; Eriksen v. Ray, supra note 8.
[15] See, Marks v. Judicial Nominating Comm., 236 Neb. 429, 461 N.W.2d 551 (1990); Eriksen v. Ray, supra note 8; Murphy v. Holt County Committee of Reorganization, supra note 8.
[16] See, e.g., Mooney v. Gordon Memorial Hosp. Dist., 268 Neb. 273, 682 N.W.2d 253 (2004).