SHELDON I. BARNETT ET AL., APPELLEES, IMPLEADED WITH DARLENE J. CLARK, APPELLANT, v. MIKE BOYLE, ELECTION COMMISSIONER OF DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLEES.
250 N. W. 2d 635

Filed February 16, 1977. No. 40851.

678

Verne Moore, Jr., Dwight J. Moore, and Paul F. Peters of Moore, Moore & Peters, for appellant.

Donald L. Knowles, John Q. Powers, and Kenneth B. Holm, for appellees Boyle et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

Prior to 1975, the members of the board of education of the Omaha School District were elected at large by the electors residing in the district. In 1975 the Legislature amended section 79-1003, R. R. S. 1943, effective January 1, 1976, to provide that the members of the board of education in a Class V district should be elected by districts. This action was brought to obtain a judgment declaring unconstitutional the 1975 amendment and the plan for the division of the Omaha School District into districts. The trial court sustained the motion for summary judgment filed by the defendant Mike Boyle, the Election Commissioner of Douglas County, Nebraska, and dismissed the action. The plaintiffs appeal.

L. B. 423, the 1975 amendments to section 79-1003, R. R. S. 1943, provided the school district should be divided into twelve numbered districts "of compact and contiguous territory and of as nearly equal population as may be practical" by the election commissioner of the county in which the greater part of such district was situated. The defendant Boyle divided the district in accordance with the requirements of the statute

and numbered the districts in accordance with the system used to number the wards in Douglas County.

The plaintiffs contend that the absence of any provision in the statute for notice and hearing prior to the division of the school district into districts for the election of board members made L. B. 423 invalid. The division of the school district into districts for the election of board members was essentially a ministerial act and was legislative in nature rather than quasi-judicial.

The fixing of boundaries of a political subdivision of a state into counties or districts for public purposes is a legislative function. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566. Procedural due process is required only when the officer to whom the power has been delegated is required to decide adjudicative facts. School Dist. No. 23 v. School Dist. No. 11, 181 Neb. 305, 148 N. W. 2d 301.

The formation of representative districts in state government is normally a legislative function. Sincock v. Duffy, 215 F. Supp. 169, 183, affirmed sub nom. Roman v. Sincock, 377 U. S. 695, 84 S. Ct. 1449, 12 L. Ed. 2d 620. Districting is usually performed by the legislative branch of government but in local matters the duty is frequently delegated to local boards and commissions or officials. There is no constitutional due process requirement of notice and hearing applicable to legislative matters. Superior Oil Co. v. Federal Power Commission, 322 F. 2d 601.

L. B. 423 further provided that incumbent members of the board of education would serve until the expiration of their terms. In 1976 and each 4 years thereafter, one member would be elected from each of the even-numbered districts. In 1978, and each 4 years thereafter, one member would be elected from each of the odd-numbered districts.

Section 79-1003, prior to the 1975 amendment, provided for 4-year terms with six members to be elected

at each general election. Thus, during 1977 and 1978, the board of education will consist of six members who were elected at large in 1974 and six members elected from even-numbered districts in 1976. After 1978 all members will have been elected from the districts established under section 79-1003, R. S. Supp., 1976.

The plaintiffs Sheldon I. Barnett and Thelma H. Barnett reside in District 1. The plaintiff Darlene J. Clark resides in District 5. Since the plaintiffs reside in odd-numbered districts they did not vote for any member of the board of education in 1976. Because of the residence of the members who were elected in 1974, during 1977 and 1978 there will be no members residing in Districts 1, 5, and 7; two members will be residents of District 4; three members will be residents of District 10; and one member will be a resident in each of the other 7 districts.

The plaintiffs contend that they were disfranchised by L. B. 423 and will be deprived of the same quality of representation and voice in school district affairs as residents in other districts; that L. B. 423 serves no compelling state interest; and that they have been denied equal protection of the laws. The plaintiffs rely primarily upon Kramer v. Union Free School Dist., 395 U. S. 621, 89 S. Ct. 1886, 23 L. Ed. 2d 583.

The Kramer case involved a New York statute which limited the electors in certain school district elections to the owners or lessors of taxable real estate or the parents or custodians of children enrolled in the local public schools. The United States Supreme Court held that this statute denied the equal protection of the law to electors who would otherwise be qualified to vote in the school elections and the statute was not required to satisfy a compelling state interest.

Unlike the statute involved in the Kramer case, L. B. 423 does not disfranchise the plaintiffs. They will be eligible to vote for members from their districts in 1978,

and in the meantime they will be represented by members who were elected at large in 1974. The fact that L. B. 423 provides for staggered terms with one-half of the members to be elected at each general election does not establish a classification which results in invidious discrimination.

In Pate v. El Paso County, Texas, 324 F. Supp. 935, affirmed, 400 U. S. 806, 91 S. Ct. 55, 27 L. Ed. 2d 38, a redistricting plan was held valid although voters who would have been entitled to vote at the next election were transferred to districts in which they would not be entitled to vote until the second following election. In rejecting a contention that these voters had been denied the equal protection of the laws, the court noted the provision for staggered terms insured there would be some continuity and experience in the membership of the county board thereby providing for more efficient and effective county government.

In Legislature of the State of California v. Reinecke, 110 Cal. Rptr. 718, 516 P. 2d 6, a similar case involving the reapportionment of the California Legislature, the California Supreme Court upheld a plan providing for an election in only the even-numbered new senatorial districts in 1974. The court stated: "These inequalities among groups of electors are the inevitable byproduct of reapportioning a legislative body whose members are elected for staggered four-year terms. Since these inequalities flow directly from provisions of the California Constitution, we are not free to obviate them unless they constitute invidious discriminations violative of the equal protection clause of the fourteenth amendment to the Constitution of the United States. * * * The state may rationally consider stability and continuity in the Senate as a desirable goal which is reasonably promoted by providing for four-year staggered terms. The resulting inequality among electors is limited to the two-year period following reapportionment and results in even less temporary disenfranchise-

ment than the up to four-year disenfranchisement that may be imposed on residents who move into a senate district or who become of voting age shortly after an election has taken place. To obviate the inequality would substantially interfere with the orderly operation of the four-year staggered terms system after every reapportionment. We conclude that adherence to staggered terms following reapportionment involved no invidious discriminations." See, also, Visnich v. Sacramento County Board of Education, 37 Cal. App. 3d 684, 112 Cal. Rptr. 469.

In Ferrell v. State of Oklahoma ex rel. Hall, 339 F. Supp. 73, an action involving the reapportionment of the Oklahoma State Senate, the court said: "Plaintiffs claim that it is invidiously discriminatory for the State Legislature to provide that citizens living in certain geographic areas of the State of Oklahoma, who last voted for a Senator in 1968, and who will next vote for a Senator in 1974, is untenable. During the two year transitional period in changing from the court-ordered apportionment plan of 1964 to the constitutional apportionment plan of 1972, such situations are unavoidable if four year overlapping terms are to be provided as required by the State Constitution — and to do so does not offend the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Stout v. Bottorf, 249 F. Supp. 488 (D. C. Ind. 1965); Reynolds v. State Election Board, 233 F. Supp. 323 (W. D. Okl. 1964)."

While it is not necessary to find a compelling state interest, because L. B. 423 makes no invidious discrimination between classes of electors, there is a legitimate purpose in providing for continuity in the membership of the Omaha School Board. The transition period involved in changing from an election-at-large to a district system is only a 2-year period. During the transition period the voters in the odd-numbered districts

will be represented by the members who were elected at large at the general election in 1974.

We conclude that section 79-1003, R. S. Supp., 1976, and the plan for the division of the Omaha School District into voting districts, are not unconstitutional. The judgment of the District Court is affirmed.

AFFIRMED.