GUS PICK AND WM. D. DENDINGER, APPELLANTS, V. E. BENJAMIN NELSON, GOVERNOR OF NEBRASKA, ET AL., APPELLEES.

528 N.W.2d 309

Filed March 3, 1995.   No. S-94-014.

488

John M. Guthery, of Perry, Guthery, Haase & Gessford, P.C., for appellants.

Don Stenberg, Attorney General, Dale A. Comer, and Charles E. Lowe for appellees Nelson, Allen J. Beermann, and State of Nebraska.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and GRANT, J., Retired, and HOWARD, D.J., Retired.

HOWARD, D.J., Retired.

Gus Pick and William D. Dendinger (appellants), registered electors and taxpayers in Cedar County, appeal the Lancaster County District Court's dismissal of their lawsuit challenging the constitutionality of 1992 Neb. Laws, L.B. 7, an amendment to 1991 Neb. Laws, L.B. 614, those statutes being codified at Neb. Rev. Stat. § 50–1101 et seq. (Reissue 1993). The district court found that L.B. 7, which altered the boundaries of certain legislative districts, was constitutional and dismissed the case.

We affirm the order of the district court.

## STANDARD OF REVIEW

An action to declare a statute unconstitutional "is more akin to relief through an equity action than to relief through a law action." *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 657, 477 N.W.2d 577, 581 (1991). Accord, *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992); *Day v. Nelson*, 240 Neb. 997, 485 N.W.2d 583 (1992). On appeal from an equity action, the appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. See, *Robotham v. State, supra*; *Day v. Nelson, supra*; *State v. Nebraska Assn. of Pub. Employees, supra*.

## FACTS

This case arises from a statewide legislative redistricting

following the 1990 decennial census. The redistricting was accomplished pursuant to L.B. 614. Based on the state's 1990 census population, the Legislature's Committee on Government, Military, and Veterans' Affairs had determined the optimum number of persons for each of the state's 49 legislative districts to be 32,212, plus or minus 2 percent. Madison County's population fell within that range. Nonetheless, L.B. 614 divided Madison County and placed it into districts 18 and 40, each of which contained all or portions of other counties as well. District 19, located generally north of Madison County, contained all or parts of five counties.

Residents of Madison County challenged the constitutionality of the division of that county into two districts. See *Day v. Nelson, supra.* In *Day*, this court held L.B. 614 to be unconstitutional as to Madison County because the Legislature had failed to follow the Madison County lines for the boundaries of one single legislative district even though it was practical to do so.

The Legislature, in special session, enacted L.B. 7 on August 12, 1992, in response to *Day*. The bill, which contained an emergency clause, was signed into law by the Governor on August 14 and went into effect immediately. As a result of L.B. 7, Madison County was redistricted to constitute legislative district 19, and the former district 19 was divided and added to the remaining portions of districts 18 and 40.

Appellant Pick had received the second highest number of votes in the May 1992 primary in the former district 19 and had received a certificate of nomination from the state board of canvassers. The *Day* decision, filed on July 2, and the enacting of L.B. 7 on August 12 followed the primary, but were prior to the November 1992 general election. Pick's residence following the enacting of L.B. 7 was in the new district 18, rather than in the old district 19, and Pick was no longer eligible to run for state legislator in the November election because only odd–numbered districts held elections for state legislator in November 1992.

The candidate who received the most votes in the former district 19 primary, De Carlson, is not a party to this case. Carlson filed a lawsuit in the U.S. District Court for the District

of Nebraska raising many of the same constitutional questions which Pick raises and seeking injunctive relief. That court denied Carlson injunctive relief. See Carlson v. Nelson, case No. 4:CV92–3300 (D. Neb. Sept. 3, 1992).

Appellant Dendinger, a voter in the former district 19, was denied the opportunity to vote for legislator in the November 1992 general election because he resided in the new district 18 after L.B. 7 was enacted.

Appellants filed in the district court for Lancaster County a declaratory judgment action against E. Benjamin Nelson, Governor of Nebraska, and other state officials, challenging the constitutionality of L.B. 7 and requesting that its implementation be enjoined. The plaintiffs in *Day v. Nelson, supra,* moved to intervene in the case and were given leave to do so by the district court. However, no petition in intervention was ever filed.

The district court found that the statute was not unconstitutional and denied appellants' request for an injunction. They timely appealed directly to this court, as the matter involves the constitutionality of a statute.

## ASSIGNMENTS OF ERROR

Appellants contend that the district court erred in failing to find that L.B. 7 (1) violates Neb. Const. art. III, § 5, in that it does not follow county lines where practicable; (2) constitutes an invalid special law in violation of Neb. Const. art. III, § 18; (3) violates Neb. Const. art. I, § 22, with regard to free elections; (4) denied Pick a constitutionally protected property right in his certificate of nomination; (5) denied Pick the right to free speech and association as guaranteed by federal and state Constitutions; (6) denied appellants equal protection of the laws; and (7) violates U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, with regard to impairment of contracts.

## ANALYSIS

Before turning to appellants' assignments of error, we note that one claiming that a statute is unconstitutional has the burden to show that the questioned statute is unconstitutional. *State v. Philipps,* 246 Neb. 610, 521 N.W.2d 913 (1994); *Henry v. Rockey,* 246 Neb. 398, 518 N.W.2d 658 (1994). A statute is presumed to be constitutional, and all reasonable doubts will be

resolved in favor of its constitutionality. *Id.* Unconstitutionality must be clearly established before a statute will be declared void. *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990).

### FAILURE TO FOLLOW COUNTY LINES

Appellants allege that L.B. 7 violates Neb. Const. art. III, § 5, in that it does not follow county lines where practicable. We have disposed of this issue in *Hlava v. Nelson, ante* p. 482, 528 N.W.2d 306 (1995). In that case, we stated that except for those counties with populations of the ideal size for a single legislative district, the Legislature has the discretion to determine which counties are to be divided in the redistricting process. We specifically held in *Hlava* that L.B. 614, as amended by L.B. 7 and 1992 Neb. Laws, L.B. 15, was not unconstitutional. We decline to further revisit the issue, and we adopt the rationale and holding of the court in *Hlava*. This assignment of error is without merit.

### SPECIAL LAW

Next, appellants argue that L.B. 7 is unconstitutional special legislation because it affected only the candidates and voters of district 19 among all the odd-numbered districts entitled to elect state legislators in the November 1992 general election. Article III, § 18, of the Nebraska Constitution prohibits the Legislature from passing special laws as to the opening and conduction of any election.

A legislative act violates Neb. Const. art. III, § 18, as special legislation in one of two ways: (1) by creating a totally arbitrary and unreasonable method of classification or (2) by creating a permanently closed class. *Henry v. Rockey, supra*; *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). The test for a statute challenged under the special laws prohibitions of article III, § 18, is whether it bears a reasonable and substantial relation to the legitimate objectives and purposes of the legislation. *Id.*

Appellants do not allege that L.B. 7 creates a permanently closed class, and indeed, they cannot. Any classifications created by L.B. 7 can easily be changed through subsequent legislation. Rather, appellants argue that the classification

created by L.B. 7 was not rational because there existed other redistricting schemes which would not have affected the rights of the voters and candidates in district 19. We disagree.

The candidates and voters of district 19 were not "singled out" by the Legislature for special treatment. In fact, L.B. 7 was not directed at the voters and candidates of district 19 at all. Any classifications created thereby were neither arbitrary nor unreasonable and were merely incidental to the object sought to be accomplished by L.B. 7, that is, to correct a specific constitutional deficiency of L.B. 614 as mandated by this court in *Day v. Nelson*, 240 Neb. 997, 485 N.W.2d 583 (1992).

The resultant redistricting was reasonably and substantially related to the wholly legitimate legislative objective of L.B. 7. As noted above, the Legislature has the discretion to choose among competing redistricting schemes, and the fact that other schemes could have been selected does not support a finding that L.B. 7 is constitutionally infirm as special legislation.

## FREE ELECTIONS

Article I, § 22, of the Nebraska Constitution states: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." Appellants argue that L.B. 7 violates article I, § 22, because it effectively abolished the electoral process for qualified voters and candidates in district 19 who were placed in district 18 by the redistricting. Only odd–numbered legislative districts elected state senators in 1992.

This issue is controlled by our holding in *Carpenter v. State*, 179 Neb. 628, 139 N.W.2d 541 (1966). In that case, redistricting prevented some voters residing in odd–numbered districts from voting in the general election. The plaintiff contended that the redistricting statute, L.B. 925, 1965 Neb. Laws, ch. 22, p. 171, deprived the voters of the right to vote for the representative of their choice for a period of 2 years, in violation of Neb. Const. art. I, § 22.

We rejected plaintiff's argument, holding:

> With the staggered terms of Nebraska legislators provided for under Article III, section 7, of the Constitution of Nebraska, it would be a practical impossibility to redistrict

without this effect. The regulations regarding the exercise of the elective franchise . provided for under the Constitution of Nebraska, and as affected by L.B. 925, are reasonable, uniform, and impartial, and should not be treated as subverting or impeding the exercise of the elective franchise. L.B. 925 does not create any unconstitutional hindrance or impediment to the right of a qualified voter to exercise the elective franchise and does not violate Article I, section 22, of the Constitution of Nebraska.

179 Neb. at 636, 139 N.W.2d at 546. Accord *Barnett v. Boyle*, 197 Neb. 677, 250 N.W.2d 635 (1977) (holding that plaintiffs were not unconstitutionally disenfranchised by division of school district into districts for election of board members beginning in 1976 because plaintiffs would continue to be represented by members elected at large in 1974 and would be able to vote for members from their district in 1978).

Similarly, L.B. 7 does not operate to hinder or impede the right of a qualified voter to exercise the elective franchise in violation of article I, § 22. It merely requires that the voters from the old district 19 who have been placed in the new district 18 delay the exercise of that franchise for a period of 2 years. This assignment of error is without merit.

## PROPERTY RIGHT

Appellant Pick asserts that he had a property right in his certificate of nomination and that L.B. 7 deprived him of that property right without due process of law, in violation of Neb. Const. art. I, § 3. He admits that he was permitted to speak at the legislative committee hearing on L.B. 7, but complains that this "should not equate with due process properly accorded by the judicial process." Brief for appellants at 22.

The short answer to this argument is that the formation of representative districts is not a judicial process, but a legislative process. See *Barnett v. Boyle, supra*. In *Barnett*, we held that "[t]here is no constitutional due process requirement of notice and hearing applicable to legislative matters." 197 Neb. at 679, 250 N.W.2d at 637. Therefore, L.B. 7, being a legislative matter, is not subject to any constitutional infirmity on due

process grounds.

## FREE SPEECH AND FREE ASSOCIATION

Next, Pick asserts that L.B. 7 violates his rights to free speech and free association as guaranteed by the First Amendment to the U.S. Constitution and to free speech as guaranteed by Neb. Const. art. I, § 5, because he was denied the right to run as a candidate in the 1992 general election. Dendinger argues that his rights to free speech and free association were similarly violated because he was denied the right to vote in the 1992 general election.

The constitutional guarantee of freedom of speech is the same under both the Nebraska and the U.S. Constitutions. *State v. Simants*, 194 Neb. 783, 236 N.W.2d 794 (1975), *rev'd on other grounds sub nom., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976). Therefore, we do not distinguish between the two constitutions in our analysis of this issue.

The U.S. Supreme Court, in *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983), has set forth the analytical framework for 1st and 14th Amendment challenges to specific provisions of state election laws:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Although L.B. 7 is a redistricting law and not an election law per se, appellants' First Amendment challenge to the statute is based upon its effects on Pick's rights as a candidate and Dendinger's rights as a voter. These are the same rights implicated in various state election statutes which have been the

subject of the U.S. Supreme Court's review. See, e.g, *Burdick v. Takushi*, 504 U.S. 428, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992); *Anderson v. Celebrezze, supra*; *Clements v. Fashing*, 457 U.S. 957, 102 S. Ct. 2836, 73 L. Ed. 2d 508 (1982). Therefore, we find it useful to adopt the reasoning and analytical framework of the Court in the election statute cases in our analysis of appellants' claims.

We first proceed to consider the character and magnitude of the asserted injury to appellants' rights. Appellants seek to characterize their First Amendment rights to run for elective office and to vote as fundamental rights, the violation of which is entitled to strict scrutiny by this court. However, the right to run for elective office is not a fundamental right. *Bullock v. Carter*, 405 U.S. 134, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972).

Furthermore, Pick is not forever prohibited from running for state legislator by L.B. 7. He is free to pursue his candidacy in future elections in his new district should he choose to do so. The U.S. Supreme Court has held that an election statute which specifically imposed a delay on the candidacy of certain individuals was not constitutionally unsound. See *Clements v. Fashing, supra*. In *Clements*, the Court held that a statute requiring state officers to await the conclusion of their terms of office before running for the Texas Legislature was a de minimis interference with candidacy which did not impair interests protected by the First Amendment.

In this case, the delay to candidacy occasioned by L.B. 7 is not directed at Pick or at any other candidate, but is merely incidental to the purpose of the statute. Therefore, we find that any alleged injury to Pick occasioned by the delay to his candidacy is a de minimis interference which does not violate Pick's fundamental rights under the First Amendment and will not invoke strict scrutiny of the offending statute.

As to the alleged violation of appellant Dendinger's rights, we note that, although certain rights of voters are fundamental, not all restrictions on voting impose constitutionally suspect burdens upon voters' rights. See *Anderson v. Celebrezze, supra*. This court has stated that because Nebraska staggers the terms of its state legislators, it would be a practical impossibility to redistrict without depriving some voters of the right to vote for

a legislative representative for a period of 2 years. See *Carpenter v. State*, 179 Neb. 628, 139 N.W.2d 541 (1966). In the absence of evidence that L.B. 7 was a form of invidious discrimination specifically directed at depriving the voters in the former district 19 of the right to exercise their elective franchise, the 2-year delay is no more than the inevitable result of redistricting. We conclude that L.B. 7 does not create any significant impairment of Dendinger's First Amendment rights.

Next, we examine the precise interests put forward by the State as justification for the burden imposed by L.B. 7. As previously noted, L.B. 7, an amendment to L.B. 614, was enacted in response to the mandate of this court in *Day v. Nelson*, 240 Neb. 997, 485 N.W.2d 583 (1992), because the Legislature had unconstitutionally divided Madison County in violation of Neb. Const. art. III, § 5. We find the State's interest in correcting an unconstitutional redistricting scheme in response to this court's mandate to be both strong and unquestionably legitimate.

Finally, in applying the *Anderson* balancing test, we consider the extent to which the State's interests make it necessary to burden the appellants' rights. It being mandatory that the Legislature redistrict Madison County and, of necessity, some surrounding districts, it was inevitable that the rights of some voters and some candidates would be affected.

Appellants do not claim that the redistricting process is directed at them personally or that the Legislature's objective was to single out a particular class of voters or candidates. The fact that appellants, rather than other voters and candidates, have been affected by L.B. 7 is merely a byproduct of the Legislature's exercise of its discretion pursuant to Neb. Const. art. III, § 5, in selecting a constitutionally permissible redistricting plan for Madison County. See *Hlava v. Nelson, ante* p. 482, 528 N.W.2d 306 (1995).

On balance, we find that the State's interest in devising a constitutional scheme of redistricting far outweighs any burden upon appellants' state and federal rights to free speech and free association which may have been occasioned by such redistricting. This assignment of error is without merit.

## EQUAL PROTECTION

Appellants also argue that L.B. 7 violates their rights to equal protection of the laws; Pick because he was singled out for different treatment than other candidates, and Dendinger because he was denied his right to vote for state senator in the general election of 1992.

> Where a statute is challenged under the Equal Protection Clause, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." [Citation omitted.] There are two narrow exceptions to this rule. Statutes which classify by race, alienage, or national origin "will be sustained only if they are suitably tailored to serve a compelling state interest." [Citation omitted.] Likewise, statutes which classify by gender or illegitimacy must be "substantially related" to, respectively, either "a sufficiently important governmental interest" or "a legitimate state interest."

*Robotham v. State*, 241 Neb. 379, 385, 488 N.W.2d 533, 539 (1992), quoting *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

The Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges. See *Robotham v. State, supra.* Classifications that do not involve a suspect class or fundamental right are tested for rational basis. *Id.*; *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). Thus, a party attacking a statute as violative of equal protection under the state and federal Constitutions has the burden to prove that there was no rational basis for the classification. *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989).

Appellants urge that they have been deprived of "fundamental rights" so as to invoke strict scrutiny of the statute. We have already determined in our First Amendment analysis that appellants have not been deprived of any fundamental rights.

Neither Pick's status as a candidate nor Dendinger's status as a voter falls within a classification of race, alienage, or national origin so as to require that L.B. 7 be suitably tailored to serve a compelling state interest. Neither classification is based upon

gender or illegitimacy, so L.B. 7 is not required to have a substantial relation to an important or legitimate governmental interest in order to survive constitutional attack. L.B. 7 is therefore presumed to be valid unless appellants prove that there is no rational basis for the classification.

As we have previously stated, the purpose of L.B. 7 was to correct a constitutional deficiency in L.B. 614, in response to this court's mandate in *Day v. Nelson*, 240 Neb. 997, 485 N.W.2d 583 (1992). Redistricting serves the interests of equal protection as expressed in the "one person, one vote" principle, an essential element of the representative process. See, *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962), *on remand* 206 F. Supp. 341 (M.D. Tenn); *Campbell v. Area Vocational Technical School No. 2*, 183 Neb. 318, 159 N.W.2d 817 (1968).

While L.B. 7 may not be the redistricting scheme preferred by appellants, it is nevertheless rationally related to the goal of enacting a constitutional redistricting scheme in furtherance of the underlying interests of equal protection. Appellants have failed to prove otherwise and cannot prevail on this assignment of error.

## IMPAIRMENT OF CONTRACTS

Finally, Pick argues that his certificate of nomination is a contractual right and that L.B. 7 is an unconstitutional impairment of the obligation of that contract in violation of U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16. The U.S. Constitution, art. I, § 10, provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Neb. Const. art. I, § 16, provides that "[n]o . . . law impairing the obligation of contracts . . . shall be passed."

A three-step analytical framework for federal Contract Clause questions was enunciated by the U.S. Supreme Court in *Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 411–12, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983):

> The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." . . .

If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation . . . .

Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."

However, prior to determining whether L.B. 7 operates as a substantial impairment of the State's contractual obligation to Pick, we must determine whether the State has any contractual obligations to Pick within the purview of the Contract Clause. See *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982).

[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." [Citations omitted.] This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. [Citation omitted.] Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. . . . Thus, the party asserting the creation of a contract must overcome this well-founded presumption . . . .

*National R. Passenger Corp. v. A. T. & S. F. R. Co.*, 470 U.S. 451, 465-66, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985).

Therefore, we must examine the state statutes which provide for the issuance of certificates of nomination to candidates to determine if such statutes evince an intent that the State bind itself contractually by such an action. Neb. Rev. Stat. § 32-534 (Reissue 1993) states that "[t]he county clerk, election commissioner, Secretary of State, or other officer charged with

the duty of canvassing the results of a primary . . . election shall, within forty days after the election, mail a certificate of nomination to each candidate nominated at such primary election . . . ." See, also, Neb. Rev. Stat. § 32-4,101 (Reissue 1993) (setting forth the duties of the board of canvassers); Neb. Rev. Stat. § 32-424 (Reissue 1993) (providing that the names of those candidates certified by the Secretary of State shall be placed on the ballot for the general election).

The language of §§ 32-534, 32-4,101, and 32-424 gives no clear indication that the Legislature intended the mailing of a certificate of nomination to constitute a binding contract of any type between a candidate and the State. None of these sections creates or speaks of such a contract. Therefore, we must presume that the Legislature did not intend to create any private contractual or vested rights by providing for certificates of nomination to be issued to candidates, absent any showing to the contrary by Pick.

In fact, Pick makes no argument that any statute, by virtue of providing for a certificate of nomination, creates a binding contract between a candidate and the State. Rather, Pick assumes that his certificate of nomination, "as a vested property interest, is a contractual right deserving of constitutional protection," brief for appellants at 33, and argues that L.B. 7 substantially impairs that right.

Because Pick has failed to overcome the presumption that a certificate of nomination issued pursuant to § 32-534 does not constitute a contract, we need proceed no further in our analysis of this issue. There being no contractual rights vested in Pick by virtue of his certificate of nomination, L.B. 7 does not unconstitutionally impair Pick's contractual rights under either the state or federal Constitutions.

## CONCLUSION

Upon our de novo review of the facts in this case, we find that appellants have failed in their burden to clearly establish that L.B. 7 is unconstitutional. Therefore, L.B. 7 is presumed to be constitutional. The order of the district court finding L.B. 7 to be constitutional and dismissing appellants' petition is affirmed.

AFFIRMED.