REQUESTED BY: Senator Merton L. Dierks Nebraska State Legislature
LB 536 would amend several existing Nebraska statutes and thereby create a new ethanol production incentive program for the State of Nebraska. In your opinion request letter, you state that the Revenue Committee's proposed amendments to LB 536 (AM 1356) would strike the original provisions of the legislation and become the bill. You then describe the effect of AM 1356 and the new bill as follows:
 As you will note, [the amended] LB 536 would insert a new subsection (4) of Section 66-1344
[Neb. Rev. Stat. § 66-1344 (Cum. Supp. 2000)] to provide a production incentive of 20 cents/gal of ethanol produced for new plants which come into production before June 30, 2004, subject to limitations and qualifications prescribed. Additionally, new subsection (5) added by [amended] LB 536 would enable an existing plant which has not received credits prior to June 1, 1999 to qualify for credits under new subsection (4). However, the total amount of credits such facility may earn under the new production incentive program is to be reduced by the amount of credits such facility may have earned since June 1, 1999 under previous or existing production incentive programs.
You have now requested our opinion as to whether the new subsection (5) to be added to § 66-1344 by the committee amendments is special legislation in contravention of art. III, § 18 of the Nebraska Constitution. You also wish to know whether a potential amendment to the committee amendments which would strike the new subsection (5) and directly include the facilities described in that subsection in the new subsection (4) of LB 536 would cure any special legislation problems with the committee amendments.
 ANALYSIS Art. III, § 18 of the Nebraska Constitution provides, as is pertinent:
 The Legislature shall not pass local or special laws in any of the following cases, that is to say:
* * * *
 Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
A legislative act violates art. III, § 18 if the act (1) creates a totally arbitrary and unreasonable method of classification, or (2) creates a permanently closed class. Bergan Mercy Health System v. Haven,260 Neb. 846, 620 N.W.2d 339 (2000); Mapco v. State Board ofEqualization, 238 Neb. 565, 471 N.W.2d 734 (1991); Haman v. Marsh,237 Neb. 699, 467 N.W.2d 836 (1991). The committee amendments to LB 536 must be tested under that standard.
The first part of the special legislation test established in Nebraska cases involves a determination as to whether a statutory classification is totally arbitrary and unreasonable. In that context, the classification must bear a reasonable and substantial relation to the legitimate objects and purposes of the legislation. Pick v. Nelson,247 Neb. 487, 528 N.W.2d 309 (1995). As stated in the Haman case:
A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without asubstantial difference . . . . Classification is proper if the special class has some reasonable distinction from other subjects of like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act.
Haman v. Marsh, 237 Neb. 699, 711, 467 N.W.2d 836, 846 (1991) (quoting State ex rel. Douglas v. Marsh, 207 Neb. 598, 300 N.W.2d 181
(1980)) (emphasis in original).
Under the language of the committee amendments, the class established by subsection (5) of LB 536 would include those ethanol plants existing on or before December 31, 2000, which did not receive ethanol credits prior to June 30, 1999. Such ethanol plants would also have to be eligible to receive ethanol credits under the existing subsection (3) of § 66-1344.
It appears to us that there may well be public policy concerns which help establish substantial differences in situation and circumstances suggesting the justice and expediency of diverse legislation with respect to the class established by subsection (5) of the committee amendments to LB 536. For example, as you stated in your opinion request letter:
The goal of LB 536, as with past production incentive programs, is to encourage the expansion of the ethanol industry in this state. The effect of new subsection (5) is to retroactively include existing facilities that have not fully benefitted from previous incentive programs within the class of facilities eligible for the new production incentive program. This expansion of the definition of eligible facilities is motivated by concern that . . . the viability of facilities described in subsection (5) is less than those who have fully benefitted by previous incentive programs, creating a risk of contraction of the state's ethanol industry.
Consequently, we do not believe that the classification created by subsection (5) of the committee amendments to LB 536 is clearly so arbitrary and unreasonable as to constitute special legislation under art. III, § 18. However, with respect to the first portion of the special legislation test, we would suggest that it would be helpful if the legislative history of LB 536 were to contain some description of the substantial differences in situation or circumstances which led to the diverse treatment and classifications set out subsection (5) of the committee amendments.
A legislative classification may also violate art. III, § 18 as improper special legislation if it creates a permanently closed class. In considering whether a class established by legislation is closed, the courts are not limited to the face of the legislation, but may consider the act's application. Haman v. Marsh, 237 Neb. 699, 467 N.W.2d 836
(1991). In such a consideration, courts must consider the actual probability that others will come under the act's operation. Id. If the prospect that others may come under the act's operation is merely theoretical, and not probable, the act is special legislation. Id. The conditions of entry into the class must not only be possible, but reasonably probable of attainment. Id. The court in Haman also stated, "a classification which limits the application of the law to a present condition, and leaves no room for opportunity for an increase in the numbers of the class by future growth or development, is special." Id. at 716, 467 N.W.2d at 848.
Subsection (5) of the committee amendments to LB 536 would extend ethanol credits to "[a] facility existing on or before December 31, 2000, which has not received credits prior to June 30, 1999, and was eligible to receive credits under subsection (3) of this section [§66-1344]." As a result, the class of facilities eligible for credits under that subsection is limited to a finite group of facilities in existence at the end of 2000 which previously did not receive ethanol credits. It appears to us that there is no opportunity for an increase in the numbers of that class by future growth or development. Consequently, we believe that the legislative classification at issue in subsection (5) of the committee amendments to LB 536 creates a permanently closed class in contravention of art. III, § 18 of the Nebraska Constitution. Our conclusion in that regard is consistent with previous opinions of this office regarding such classifications. See Op. Att'y Gen. No. 98003 (January 9, 1998) (Bill which granted supplemental retirement benefits only to retirees who retired prior to a certain date was special legislation); Op. Att'y Gen. No. 97026 (April 29, 1997) (Bill which granted supplement pension benefits only to retirees having 20 or more years of service as of the effective date of the act was special legislation).
Finally, you have also asked us whether a potential amendment to the committee amendments to LB 536 which would strike the new subsection (5) and directly include the facilities described in that subsection in the new subsection (4) of LB 536 would cure any special legislation problems with the committee amendments. That potential amendment would broaden the definition of a new ethanol facility which would be entitled to receive ethanol credits under subsection (4) of LB 536 to include "a facility which is not in production on or before the effective date of this act or an existing facility which has not received credits prior to June 1, 1999."
The special legislation test set out above with respect to subsection (5) of the committee amendments to LB 536 applies equally to your potential amendment to the committee amendments, i.e., that amendment cannot create a totally arbitrary and unreasonable method of classification or a permanently closed class. For the reasons discussed above in the context of subsection (5) of the committee amendments, we do not believe that the classification created by your proposed amendment to subsection (4) of the committee amendments would clearly be so arbitrary and unreasonable as to constitute special legislation under art. III, § 18. Therefore, we need consider only whether your potential amendment would created a permanently closed class.
Your potential amendment to subsection (4) of the committee amendments would broaden the defined class of ethanol facilities entitled to ethanol credits to include both facilities placed in production after the effective date of the act and existing facilities which had not received credits prior to June 1, 1999. It appears to us that there is an opportunity for an increase in the numbers of that class by future growth or development. In addition, we believe that there is a reasonable probability that new ethanol plants will come under the statute's operation so as to obtain the ethanol credits available. For those reasons, your potential amendment to the committee amendments to LB 536 appears to be constitutional under art. III, § 18 of the Nebraska Constitution.
 Sincerely yours, DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General