STATE OF NEBRASKA EX REL. LAUREY STEINKE, AN INDIVIDUAL, AND JOHN T. LANGAN, AN INDIVIDUAL, APPELLEES, V. SCOTT A. LAUTENBAUGH, DOUGLAS COUNTY ELECTION COMMISSIONER, IN HIS OFFICIAL CAPACITY, APPELLANT.

642 N.W.2d 132

Filed April 10, 2002. No. S-02-206.

H. Daniel Smith and John A. Kinney, of Dwyer, Smith, Grimm, Gardner, Lazer, Pohren, & Rogers, for appellant.

Jill Robb Ackerman and David M. Pedersen, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Douglas County Election Commissioner Scott A. Lautenbaugh appeals from an order of the district court for Douglas County allowing the issuance of a peremptory writ of mandamus directing Lautenbaugh to restore the number "9" to the adjusted territory of an Omaha school board election subdistrict and to accept John T. Langan's filing as an incumbent candidate for reelection in that subdistrict. We affirm.

## FACTS

Relators, Laurey Steinke and Langan, are individual taxpayers, voters, and residents of Douglas County School District No. 001, a Class V school district commonly known as Omaha Public Schools (OPS). Prior to November 29, 2001, both were residents of OPS board election subdistrict No. 9, and Langan was the incumbent board member from that subdistrict. On that date, Lautenbaugh, in his official capacity as election commissioner, certified new boundaries for the 12 OPS board election subdistricts based upon 2000 federal decennial census data. See Neb. Rev. Stat. §§ 32-552 and 32-553 (Reissue 1998 & Supp. 2001). After Lautenbaugh's certification of new boundaries, neither Steinke nor Langan, nor any other resident of what had been subdistrict No. 9, resided in the newly designated subdistrict No. 9.

On February 5, 2002, Langan filed a "Candidate Filing Form for Non Partisan Office" with the Douglas County Election Office, indicating his intention to run for reelection to the office of OPS board member in subdistrict No. 9 at the May 14, 2002, election. This filing was rejected by Lautenbaugh because Langan was no longer a resident of subdistrict No. 9 according to the new boundaries. On the same day, relators filed a petition and an affidavit for writ of mandamus in the district court for Douglas County. The petition alleged that Lautenbaugh exceeded his authority under § 32-552(3) and abused his statutory power by "not simply adjusting boundaries, but by also switching the numbers between" subdistricts Nos. 9 and 10. The petition further alleged that the general area of former subdistrict No. 9 was labeled subdistrict No. 10 by Lautenbaugh and that the general area of former subdistrict No. 10 was labeled subdistrict No. 9. Pursuant to Neb. Rev. Stat. § 32-545 (Reissue 1998), elections for odd-numbered subdistricts will be held in 2002 and elections for even-numbered subdistricts will be held in 2004. The petition requested the issuance of a writ of mandamus directing Lautenbaugh to restore the subdistrict numbers and accept Langan's filing in subdistrict No. 9. An alternative writ was ordered by the court.

On February 12, 2002, trial was held on the provision of the alternative writ compelling Lautenbaugh to appear and show cause. Relators appeared with counsel, and Lautenbaugh appeared pro se. On cross-examination, Lautenbaugh testified that no subdistrict numbers were put in before he adjusted the boundaries. He further testified:

> [Counsel for relators:] So you had that done. So you had all of that done, but then when you put the numbers on, the numbers didn't have anything to do with population — did it — adjusting these boundaries for population when you changed the numbers?
>
> [Lautenbaugh:] No.
>
> Q. And they didn't have anything to do with keeping this area compact; did they?
>
> A. The numbers, no.
>
> Q. And they didn't have anything to do with keeping it contiguous; did it?

A. No. I drew all of them to be compact and contiguous.

Q. Basically your changing the numbers didn't have anything to do with your statutory directive; did it?

A. The one you cited, no.

Q. That's [§§ 32-]552 and [32-]553 that we looked at; isn't that correct?

A. Yes.

On redirect, Lautenbaugh testified that "[a]s it now stands, if the Relators are successful, the people in District 10 will be represented by someone who lives outside of District 10. In my opinion, that is a judgment call that I made as a proper consideration of how to redistrict." Upon being questioned by the court, Lautenbaugh testified that "how I numbered the districts after I adjusted the lines was largely then a function of whether or not a district would go unrepresented for three years with a resident incumbent or otherwise."

During the February 12, 2002, trial, the district court concluded that Lautenbaugh exceeded his statutory authority because "[r]egardless of how pure his motive was, he is not permitted to take into account a political result or political situation which occurs as a result of him performing his statutory duty to adjust the boundaries." On February 14, the district court ordered the issuance of a peremptory writ of mandamus. Lautenbaugh filed this timely appeal, which, upon relators' request to expedite due to the pending May 14, 2002, election, we moved to our docket.

## ASSIGNMENTS OF ERROR

Lautenbaugh assigns that the district court erred in (1) finding that relators had standing to bring suit, (2) issuing a peremptory writ barred by the separation of powers provisions of the Nebraska Constitution, (3) issuing a peremptory writ in a case which raises only a political question, (4) accepting jurisdiction and issuing a peremptory writ barred by sovereign immunity, (5) finding that the 12 OPS subdistricts had to remain unchanged as "core territories," and (6) substituting its discretion for the discretion of the election commissioner in the drawing of subdistrict boundaries for school district elections.

## STANDARD OF REVIEW

 Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *Sydow v. City of Grand Island, ante* p. 389, 639 N.W.2d 913 (2002). A grant or denial of mandamus is within the trial court's discretion. *State ex rel. Fick v. Miller,* 255 Neb. 387, 584 N.W.2d 809 (1998).

 A jurisdictional question which does not involve a factual dispute is a matter of law. *Sydow v. City of Grand Island, supra.*

## ANALYSIS

### STANDING

 Lautenbaugh asserts that relators lack standing and that, thus, the district court lacked jurisdiction to order the issuance of the writ. Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Hagan v. Upper Republican NRD,* 261 Neb. 312, 622 N.W.2d 627 (2001). As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id.*

 In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.* In order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated actions, and it is not sufficient that one has merely a general interest common to all members of the public. *Id.* Specifically,

> "[a] person seeking to restrain the act of a public board or officer must show special injury peculiar to himself or herself aside from and independent of the general injury to the

public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation."

*Id.* at 317, 622 N.W.2d at 630, quoting *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000), citing *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999).

In the instant case, Steinke alleged that she was injured by the challenged renumbering of subdistricts Nos. 9 and 10 because she will be denied the opportunity to vote for the candidate of her choice in the upcoming election, she will be denied the opportunity to vote in the upcoming election, and she will be represented for the next 2 years by a school board member who was not elected by the constituents in her subdistrict. Langan alleged that he was injured by the challenged renumbering because he will be denied the opportunity to file and run for office for OPS subdistrict No. 9, he will be denied the opportunity to vote for the school board candidate of his choice, he will be denied the opportunity to vote in the upcoming election, and he will be represented for the next 2 years by a school board member who was not elected by the constituents in his subdistrict. The issue is whether these allegations demonstrate a special injury peculiar to relators.

Lautenbaugh argues that relators have suffered no injury because they have no legal right to vote in this particular election for any particular candidate. In *Barnett v. Boyle*, 197 Neb. 677, 250 N.W.2d 635 (1977), we held that voters affected by the original division of OPS into subdistricts and the implementation of the staggered election system did not have a valid equal protection claim that they were disenfranchised by the enactment of the statute. We noted that the right to vote was merely delayed and not denied. *Barnett*, however, addressed only whether the constitutional right to vote was violated; it did not hold that a person is not injured by a delay in his or her right to vote. In fact, by reaching the merits and determining that the statute requiring election by subdistrict was constitutional, *Barnett* implicitly recognized that the plaintiffs had standing to bring the action. Relators herein have alleged a direct interest in participating in the upcoming election that will be affected by the actions of the election commissioner which they challenge as unlawful.

Lautenbaugh also asserts that relators have demonstrated no injury that is peculiar to them and not an injury suffered by the public at large. Although the injury alleged by relators was presumably suffered by all residents of the former subdistrict No. 9, those residents do not constitute the general public. Relators have alleged a special interest peculiar to them and therefore have standing to bring this action. Compare *Neb. Against Exp. Gmblg., supra* (holding taxpayer and nonprofit organization opposed to gambling lacked standing to challenge State Racing Commission's issuance of simulcast horseracing license when plaintiffs asserted only general interest common to all members of public); *Ritchhart, supra* (holding Omaha citizen and taxpayer lacked standing to challenge verbal agreements between mayor, fire chief, and communications chief because no special injury independent from that of general public alleged).

### SEPARATION OF POWERS

Lautenbaugh asserts that the district court violated the doctrine of separation of powers embodied in the Nebraska Constitution when it ordered the issuance of the peremptory writ. Article II, § 1, of the Nebraska Constitution provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Lautenbaugh contends that it is for "the legislature and legislature alone to design a scheme for fixing the boundaries of these [school] districts, and to delegate the power as it sees fit, and the entire matter is 'not subject to judicial review.' " Brief for appellant at 18, quoting *School District No. 49 v. School District No. 65-R*, 159 Neb. 262, 66 N.W.2d 561 (1954).

Initially, we note that Lautenbaugh did not present this argument to the district court. Except in the most unusual of cases, a separation of powers constitutional argument must be raised in the district court in order to be preserved on appeal. See, *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997); *State v. Criffield*, 241 Neb. 738, 490 N.W.2d 226 (1992). Lautenbaugh had the opportunity

to raise the separation of powers issue in his answer to the alternative writ and at the hearing to show cause on that writ, but did not do so. He therefore has not preserved the issue for our review.

 Moreover, there is no violation of the doctrine of separation of powers in this case. Clearly, the creation of school districts and their boundaries is a legislative function which may be delegated to another body. *Farrell v. School Dist. No. 54*, 164 Neb. 853, 84 N.W.2d 126 (1957); *School District No. 49, supra.* When such duties are delegated, they remain a function entirely within the province of the Legislature and are not subject to judicial review. *Id.* However, when the Legislature delegates authority, it may place such restrictions and limitations upon the authority granted as it chooses. *Nickel v. School Board of Axtell*, 157 Neb. 813, 61 N.W.2d 566 (1953). In the instant action, the courts are not being asked to redistrict, but, rather, to interpret the statutes by which the Legislature delegated authority to the election commissioner to adjust district boundaries in order to determine what restrictions and limitations, if any, the Legislature imposed upon the delegated authority. Interpreting a statute presents a question of law for judicial determination. *Arizona Motor Speedway v. Hoppe*, 244 Neb. 316, 506 N.W.2d 699 (1993); *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993). The district court therefore did not violate the separation of powers doctrine by interpreting the relevant statutes in this case.

## POLITICAL QUESTION

In a related argument, Lautenbaugh argues that neither the district court nor this court should address the issue presented because it involves a political question. As we have noted, although this appeal relates to the legislative function of establishing school district subdivisions, and as a political consequence the representation thereof, the precise issue before this court is simply the justiciable question of the proper interpretation of applicable statutes. See *Bressler v. Chicago & N. W. Ry. Co.*, 152 Neb. 732, 42 N.W.2d 617 (1950). There is no political question involved in this case, and the district court did not err in addressing the issue.

SOVEREIGN IMMUNITY

Lautenbaugh asserts that the district court lacked subject matter jurisdiction to order the issuance of the writ because the state's sovereign immunity barred the suit. In *Henderson v. Department of Corr. Servs.*, 256 Neb. 314, 589 N.W.2d 520 (1999), we held that nothing in the mandamus statutes, Neb. Rev. Stat. §§ 25-2156 to 25-2169 (Reissue 1995), indicates a legislative intent to waive sovereign immunity for mandamus actions against a state agency. Thus, if the instant action were brought against a state agency, it would be barred.

 In this case, the suit is brought against a public official who is a county employee. See Neb. Rev. Stat. § 32-217 (Reissue 1998) (designating election commissioner as county employee). A county is a political subdivision of the state and has subordinate powers of sovereignty conferred by the Legislature. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). As such, it acts purely as an agent of the state. *Id.* When an action is brought against an individual employee of a state agency, a court must determine whether the action against the individual official is in reality an action against the state and therefore barred by sovereign immunity. See *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995). In addressing this issue, we have stated that an action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the state and is not prohibited by sovereign immunity. *Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999). This exception to the rule of sovereign immunity exists because " 'acts of state officers not legally authorized, or which exceed or abuse the authority conferred upon them, are judicially regarded as their own acts and not acts of the state.' " *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 156, 505 N.W.2d 654, 658 (1993), quoting *Rein v. Johnson*, 149 Neb. 67, 30 N.W.2d 548 (1947). Suits which seek to compel affirmative action on the part of a state official are barred by sovereign immunity, but if a suit simply seeks to restrain the state official from performing affirmative acts, it is not within the rule of immunity. *Logan v. Department of Corr. Servs.*, 254 Neb. 646, 578 N.W.2d 44 (1998).

Application of the foregoing principles demonstrates that this is not in reality an action brought against the state or one of its political subdivisions. The basis for relators' claims is that Lautenbaugh exceeded his statutory authority to adjust subdistrict boundaries, and thus, they seek relief from what they allege to be an invalid act or an abuse of authority by Lautenbaugh. In this situation, the relief requested is affirmative only to the extent that it requests Lautenbaugh's actions be nullified if determined to be invalid. Because the mandamus is brought only to remedy alleged invalid acts of a county official, the district court did not lack subject matter jurisdiction.

### ISSUANCE OF WRIT

Lautenbaugh contends that the district court erred in ordering the issuance of the writ because §§ 32-552 and 32-553 vest the election commissioner with complete discretion to renumber and adjust school district boundaries in a Class V school district. As noted, the creation of school districts and their boundaries is a legislative function which may be delegated to another body. *Farrell v. School Dist. No. 54*, 164 Neb. 853, 84 N.W.2d 126 (1957); *School District No. 49 v. School Dist. No. 65-R*, 159 Neb. 262, 66 N.W.2d 561 (1954). However, when the Legislature delegates authority, it may place such restrictions and limitations upon the authority granted as it chooses. *Nickel v. School Board of Axtell*, 157 Neb. 813, 61 N.W.2d 566 (1953). Therefore, the fact that the Legislature has delegated some authority to the election commissioner of a county in which a Class V school district is located does not necessarily mean that the election commissioner may act with unfettered discretion. To determine what authority has been delegated, it is necessary to examine the statutory language.

Section 32-553(1) provides that "[w]hen any political subdivision except a public power district nominates or elects members of the governing board by districts, such districts shall be substantially equal in population as determined by the most recent federal decennial census." Section 32-553(1) also mandates that political subdivisions "shall, if necessary to maintain substantial population equality as required by this subsection, have new district boundaries drawn within six months after the

passage and approval of the legislative bill providing for reestablishing legislative districts" after each federal decennial census. According to § 32-552(1), any political subdivision that makes changes to its district boundaries after a federal census must notify the election commissioner or county clerk in the county of the need of his or her office to perform such "adjustment of the boundaries of election districts."

Section 32-553(2) provides:

> The governing board of each such political subdivision shall be responsible for drawing its own district boundaries and shall, as nearly as possible, follow the precinct lines created by the election commissioner or county clerk after each federal decennial census, except that the election commissioner of any county in which a Class IV or V school district is located shall draw district boundaries for such school district as provided in this section and section 32-552.

Section 32-552(3) provides:

> The election commissioner of the county in which the greater part of a Class V school district is situated shall divide the school district into twelve numbered districts of compact and contiguous territory and of as nearly equal population as may be practical. The election commissioner shall adjust the boundaries of such districts to conform to changes in the territory of the school district and also following each federal decennial census.

These statutes, read together, clearly impose limitations and restrictions upon the authority of the election commissioner when performing his or her duties relating to school districts after each federal decennial census. Section 32-553(2) provides that an election commissioner is to "draw district boundaries" as provided in §§ 32-553 and 32-552. Section 32-553(1) mandates that all districts be substantially equal in population and requires a political subdivision to "have new district boundaries drawn" only "if necessary to maintain substantial population equality" within the districts. Section 32-552(3), in turn, allows the election commissioner to "adjust the boundaries" of the districts following each federal decennial census. Read together, §§ 32-552 and 32-553 authorize an election commissioner to draw or adjust the boundaries of school districts following a federal

decennial census only as is necessary to maintain substantial population equality within the districts.

In the instant case, Lautenbaugh testified that he adjusted the boundaries of the districts to account for population changes. He further testified, however, that he then assigned the number "9" to the territory which included most of former subdistrict No. 10, and the number "10" to the area which included most of former subdistrict No. 9, so that the incumbent board member in former subdistrict No. 10 would remain a resident of that district following adjustment of the boundaries. Lautenbaugh conceded that his assignment of subdistrict numbers had nothing to do with the statutory directives set forth in §§ 32-552 and 32-553, but contended that the residency of the incumbent was a "political factor" which formed the basis for a "judgment call that I made as a proper consideration of how to redistrict." We note that Lautenbaugh's alteration of subdistrict numbers was not necessary to preserve the incumbency of the school board member who had been elected from subdistrict No. 10. Adjustment of district boundaries does not have the effect of depriving an incumbent from exercising his or her duties for the full elected term even when the change of boundary lines places the officer's residence outside the district from which he or she was elected. *State v. Haverly*, 62 Neb. 767, 87 N.W. 959 (1901). See, also, *Barnett v. Boyle*, 197 Neb. 677, 250 N.W.2d 635 (1977) (noting that during transition period from election of school board members on at-large basis to election by district in alternating years, residents of some odd-numbered districts would be represented by school board members who had been elected at large).

We agree with the district court that the applicable statutes do not authorize an election commissioner to take into account political considerations when adjusting boundaries following a federal decennial census. As noted, the applicable statutes authorize the election commissioner to adjust subdistrict boundaries to maintain substantial equality in population. The statutes do not authorize the formation of new subdistricts. See *State v. Haverly, supra.* By adjusting the boundaries of what had been subdistricts Nos. 9 and 10 to reflect population changes reflected in the 2000 census data, Lautenbaugh carried out his statutory authority. By then assigning the subdistrict numbers to

the areas within the adjusted boundaries based upon the residency of an incumbent, he clearly exceeded that authority.

■ Mandamus is an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plan and adequate remedy available in the ordinary course of law. *Sydow v. City of Grand Island, ante* p. 389, 639 N.W.2d 913 (2002). A decision by a public official contrary to law or based on a mistaken view of the law is not within the exercise of discretion lying outside the remedy of mandamus, and by mandamus, a court can correct such mistake of law and compel the proper application of law, thereby converting an otherwise discretionary act into a purely ministerial duty. See, *State ex rel. Wieland v. Beermann,* 246 Neb. 808, 523 N.W.2d 518 (1994); *State ex rel. Creighton Univ. v. Smith,* 217 Neb. 682, 353 N.W.2d 267 (1984). Lautenbaugh's decision to alter the numbering of subdistricts Nos. 9 and 10 was a decision contrary to law, and the district court did not err in ordering the issuance of a peremptory writ directing Lautenbaugh to return the original numbers to the subdistricts. In addition, because Langan resides within the proper subdistrict No. 9, the court did not err in ordering Lautenbaugh to accept Langan's filing.

## CONCLUSION

For the reasons discussed, we affirm the order of the district court authorizing the issuance of a peremptory writ of mandamus, and we remand the cause to the district court for implementation of such relief.

AFFIRMED.